917 F.2d 564
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis Carlos GUERRERO, Defendant-Appellant.
 No. 88-5986.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1990.
 
 Before NATHANIEL R. JONES, RYAN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Luis Carlos Guerrero appeals his conviction on nine counts of possession and distribution of cocaine. Guerrero asserts that he was denied effective assistance of counsel when the trial court did not override his waiver of objections to counsel in light of a conflict of interest and that the court should have granted his motion for a mistrial. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Guerrero was indicted on February 17, 1988, in a nine-count indictment involving conspiracy to import and distribute cocaine, possession with intent to distribute more than a kilo of cocaine and distribution of cocaine in violation of a number of federal statutes. Guerrero was tried before a jury in Cookeville, Tennessee from May 31, 1988 to June 15, 1988. The trial ended in a mistrial due to the jury's inability to come to a verdict.
 
 
 3
 On July 1, 1988, before Guerrero's second trial, the government filed a Motion to Disqualify Defense Counsel. After a hearing on July 7, 1988, the Motion to Disqualify was denied. Guerrero was tried a second time before a jury from July 12, 1988 to July 20, 1988 and was convicted on all counts. On August 8, 1988, the defendant filed a Motion For New Trial based upon denial of the defendant's right to effective assistance of counsel. The motion was denied. On August 29, 1988, Guerrero was sentenced to 20 years on each Count with the exception of a 15-year sentence on Count III. All sentences were to run consecutively. Guerrero was also fined $250,000.00 on each Count and charged a $400.00 special assessment. Guerrero timely filed this appeal on August 29, 1988.
 
 
 4
 The relevant facts for this appeal involve the trial court's denial of the government's motion for disqualification of defense counsel and later motions for a mistrial put forward by the defense. Two days prior to the commencement of Guerrero's second trial, the government filed a motion to disqualify attorneys O'Donnell and Clarke from representing Guerrero. This motion was based on the government's intention to call as a witness Guerrero's co-conspirator Francis Eugene White to testify to a meeting between O'Donnell and White after White's arrest. White contended in his affidavit that shortly after he was arrested, O'Donnell came to visit him in prison and, on behalf of Guerrero, inquired as to whether he had sufficient funds to get a lawyer and post bond. J.App. at 33. White also asserted that O'Donnell told him that Guerrero would "stand behind [him]" and that if he turned against the "Colombians" there would be trouble. Id.
 
 
 5
 In light of this evidence linking Guerrero to White, the government intended to call White to the stand to testify. In it Motion to Disqualify, the government asserted that O'Donnell would likely be required to testify to rebut White's testimony and therefore should be disqualified. During the hearing the trial court questioned both the government and O'Donnell about the purpose of White's testimony and whether O'Donnell would have to be disqualified. The court determined that evidence as to the alleged threat of White by O'Donnell was not admissible. Id. at 75. With respect to the occurrence of the meeting between O'Donnell and White and their discussion regarding money for bond and attorneys fees, O'Donnell did not contest these facts and argued he could sufficiently handle the scope of his discussion with White on cross-examination. Id. at 72-73. The court also questioned Guerrero as to whether he understood the potential conflict and whether he understood that O'Donnell would not be permitted to take the stand to rebut White's testimony about their meeting. Guerrero said he understood the consequences and waived any right to object. See J.App. at 74-75.
 
 
 6
 During this same hearing, the question was raised as to whether defense co-counsel Clarke would have to testify. J.App. at 71-73. At this time O'Donnell acknowledged that Clarke might have to testify and asked the court that Clarke be designated O'Donnell's "case agent." O'Donnell asserted that if Clarke were designated a "case agent," his testimony would not be problematic for the defense. Id. at 73. This discussion with respect to Clarke's testimony took place before Guerrero was asked whether he waived his right to object to representation by O'Donnell. Although Clarke sat at defense counsel's table throughout the trial, he did not actively participate in the defense before the jury.
 
 
 7
 Later at trial, White was asked about the meeting with O'Donnell. He was asked about the nature of the visit and testified that O'Donnell said that Guerrero would pay all the attorney's fees and bond for both himself and Billy Hiett.[1] J.App. at 103-04. Shortly after this testimony, the trial judge stopped the trial and excused the jury. The judge was worried that he would have to declare a mistrial because White's testimony regarding Billy Hiett suggested that O'Donnell knew about both Hiett's and White's arrest before his meeting with White and tied White, Hiett and Guerrero together in a conspiracy. Id. at 106.
 
 
 8
 The court expressed concern about prejudice to the defendant and again asked O'Donnell whether he would now need to testify to rebut White's assertion about Billy Hiett. J.App. at 106-113. O'Donnell stated that he felt that Guerrero's waiver of his right to put O'Donnell on the stand was based upon an agreement as to what evidence would be offered by the prosecution. O'Donnell asserted that the prosecution broke that agreement with the evidence about Hiett. Id. at 111. However, O'Donnell assured the court that he could clear up any difficulty with a few questions on cross-examination to White. Id. He asked White a series of questions before the jury entered and White confirmed that he had informed O'Donnell of Hiett's arrest and had raised the issue of whether Guerrero was going to pay Hiett's attorney fees. White testified as described before the jury. Id. at 116-119.
 
 
 9
 Later at trial, the prosecution called Eduardo Cantera, Guerrero's "business consultant" to the stand. Cantera, who testified under a grant of immunity, stated that he was instrumental in setting up corporations through which cash passed into a secret account held by Guerrero. Following White's arrest, Cantera claimed that Guerrero had told him to assist defense co-counsel/case agent Francis Clarke in legitimizing some of the companies seized by the government in order to show that they were purchased with money that came from a source other than drugs.
 
 
 10
 After Cantera's testimony, O'Donnell informed the court that Clarke would have to testify to refute Cantera's testimony that Clarke was involved in falsifying documents. Clarke then testified that he had advised Cantera to contest certain of the forfeitures but that he did not discuss falsifying records with Cantera. J.App. 127, 133. He also testified that he was not asked by anyone to falsify records. Id. at 149.
 
 
 11
 Following the jury verdicts, Guerrero filed a motion for new trial asserting that the prosecution's violation of the court's pretrial ruling regarding what evidence would be admissible from White, as well as the necessity for Clarke to testify, served to deprive him of a fair trial with effective assistance of counsel.
 
 II.
 
 12
 In order to establish ineffective assistance of counsel due to a conflict of interest, the defendant must show that there was an actual conflict of interest which adversely affected his representation. Cuyler v. United States, 446 U.S. 335, 348 (1979). If the defendant can show that there was an actual conflict, he need not show prejudice to succeed. Id. at 349-50.
 
 
 13
 In determining whether to grant a pretrial motion by the government to disqualify defense counsel, the trial judge must carefully balance the defendant's right to counsel of his choosing with the court's interest in the integrity of the proceedings. United States v. Reese, 699 F.2d 803, 805 (6th Cir.1983) (per curiam). Even if the court determines that the strong likelihood of a conflict or an actual conflict exists, "the defendant must be given an opportunity to waive his constitutional right to conflict-free representation." Id. A defendant's waiver of his right to conflict-free representation must be both knowing and voluntary and a valid waiver must be honored by the court absent compelling circumstances. Id.
 
 
 14
 Guerrero contends that he was denied his right to effective counsel and a fair trial when the trial court denied the government's motion to disqualify counsel, in recognition of Guerrero's waiver of his right to conflict-free representation, and in refusing to grant his motion for a new trial at the close of proceedings. It is clearly established that Guerrero must show an actual conflict existed to prevail on this appeal. See Cuyler, 446 U.S. at 348. A mere potential conflict is not enough to upset a conviction. Thacker v. Bordenkircher, 590 F.2d 640, 642 (6th Cir.), cert. denied sub nom. Thacker v. Ison, 442 U.S. 912 (1979). Thus, we must examine whether an actual conflict existed and whether Guerrero's waiver of that conflict was sufficient to satisfy his rights to a fair trial and effective assistance of counsel under the fifth and sixth amendments.
 
 
 15
 A. Whether an actual conflict existed.
 
 
 16
 Guerrero asserts that the trial judge should have overridden his waiver and granted the government's motion to disqualify counsel before trial. He also asserts that the court should have called a mistrial in light of White's testimony about Billy Hiett and the fact that defense co-counsel Clarke had to take the stand. In order to determine whether there was constitutional error at any of these junctures, we must determine whether an actual conflict existed at any of these times.
 
 
 17
 1. Before trial.
 
 
 18
 Guerrero asserts that White's accusation that O'Donnell visited him in prison, offered on behalf of Guerrero to pay White's bond and attorney's fees and threatened him if he turned against the "Colombians" created a conflict of interest. He argues that this visit and alleged threat implicated O'Donnell in the conspiracy by unlawfully trying to influence a government witness. Thus, he argues, O'Donnell had to have been concerned for his own welfare and the possibility of criminal or disciplinary charges, which posed a conflict to his representation of Guerrero. Guerrero further asserts that White's allegation that O'Donnell carried Guerrero's offer to pay for his bond and attorney fees suggested a conspiracy between White and Guerrero and necessitated that O'Donnell testify to deny White's allegations. Noting the court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them[,]" Wheat v. United States, 108 S.Ct. 1692, 1697 (1988), Guerrero asserts that the court should have insisted that he accept conflict-free counsel.
 
 
 19
 The government asserts that the trial judge properly weighed the defendant's choice of counsel and the possibility of a conflict and came to a legitimate conclusion. The trial court excluded evidence with respect to the alleged threat made by O'Donnell to White. The court agreed to let in evidence about the meeting between O'Donnell and White and the contents of that meeting, and O'Donnell and Guerrero agreed that this would not be problematic for the defense.
 
 
 20
 Guerrero argues that while the court's exclusion of the evidence of the threat alleviated the need for O'Donnell to testify to deny it, he was still burdened by concerns for his own interests. Guerrero cites several cases suggesting that the proper course is to disqualify a defense attorney who is implicated in acts which might result in criminal or disciplinary charges.
 
 
 21
 In United States v. Arrington, 867 F.2d 122, 129 (2d Cir.1989), the defense attorney was accused of threatening a government witness. He denied the allegation. The trial court called a mistrial and disqualified the defense attorney despite proffered waivers by several defendants. The Second Circuit upheld the district court's rejection of waivers and the court's grant of a mistrial. The court also held that evidence of the alleged threat by the defense attorney was admissible and that no waiver could remove the conflict or preserve the fairness of the proceedings.
 
 
 22
 In Mannhalt v. Reed, 847 F.2d 576 (9th Cir.), cert. denied, 488 U.S. 908 (1988), a chief government witness accused the defense attorney of purchasing stolen property from the defendant. On habeas review the Ninth Circuit held that when an attorney is accused of crimes similar or related to those of his client an actual conflict exists because the potential for diminished effectiveness in representation is so great. Id. at 581.
 
 
 23
 Finally, in Government of the Virgin Islands v. Zepp, 748 F.2d 125 (3d Cir.1984), prior to trial the court found that defense counsel had to withdraw or be disqualified when it was brought to the court's attention that the defense counsel had been in the defendant's house when someone in the home attempted to destroy contraband. While the court found no wrongdoing on the part of defense counsel, it still found that counsel labored under a conflict of interest.
 
 
 24
 It is clear that he [defense counsel] was potentially liable for aiding and abetting or encouraging the destruction of evidence.
 
 
 25
 Even if not criminally charged for such events, trial counsel could have faced severe disciplinary consequences if it were ever known that he was involved in the destruction of evidence....
 
 
 26
 Therefore, it is unrealistic for this court to assume that Zepp's attorney vigorously pursued his client's best interest free from the influence of his concern to avoid his own incrimination.
 
 
 27
 Id. at 136 (citations omitted).
 
 
 28
 While Mannhalt and Zepp provide guidance as to when a conflict of interest is present, this court has rejected the per se approach adopted in Mannhalt which requires finding an actual conflict when an attorney is accused of crimes similar to those of his client. Bryant v. Tate, No. 88-3701 (6th Cir. November 27, 1989) (unpublished), cert. denied, 110 S.Ct. 3247 (1990). In the instant case, while there is no indication from the record that Guerrero's representation suffered due to O'Donnell's conflict of interest and the conflict was greatly diminished by the trial court's exclusion of the threat, the weight of the case law supports a finding that an actual conflict existed before trial.
 
 
 29
 2. At Trial.
 
 
 30
 Guerrero also asserts that a conflict presented itself at trial during White's testimony when he mentioned Billy Hiett. It appears that when the trial court denied the government's pretrial motion to disqualify, the parties came to an agreement as to what evidence would be admitted and based on those conditions, Guerrero waived his right to conflict-free counsel. The conditions included that White would only testify as to his meeting with O'Donnell and that at the meeting they had discussed bond and attorney fees as to White. On the stand, White testified that O'Donnell had offered bond and attorney fees for White and Hiett. Shortly after this testimony, the court stopped the trial, excused the jury and held a conference on the necessity of calling a mistrial. He asked O'Donnell whether he now needed to testify to deny the link between Guerrero, White and Hiett. O'Donnell expressed concern here but assured the court that he could take care of the problem on cross-examination. He also tried out his questions on White before the jury returned to ensure that the conflict could properly be addressed on cross. He established that it could to the court's and to his satisfaction.
 
 
 31
 The government argues that no conflict existed because after the cross-examination of White, O'Donnell's and White's stories as to their meeting concurred and O'Donnell's credibility was not placed in question. We find that since White's testimony on cross examination before the jury exonerated O'Donnell of any offer of attorney's fees or bond for Hiett, there was no need for O'Donnell to testify and no conflict was created.
 
 
 32
 Guerrero also asserts that his representation was defective because co-counsel Clarke had to testify at trial. At the pre-trial hearing on the government's motion to disqualify, all the parties discussed the possibility of Clarke's having to testify. O'Donnell requested that Clarke be designated a "case agent" rather than defense counsel so that Clarke's testifying would not be a problem. Clarke sat at the defense counsel table during the trial but did not participate in Guerrero's defense in front of the jury. We find that Clarke functioned as a case agent and not an attorney at trial and that there was therefore no conflict of interest raised by his testifying.
 
 
 33
 B. Whether there was a valid waiver.
 
 
 34
 As we have determined that a conflict existed with respect to O'Donnell before trial we must now determine whether Guerrero validly waived his right to conflict-free representation. Guerrero asserts that the trial court should have refused his waiver, that his waiver was invalid because it was not knowing and voluntary and finally, in the alternative, that despite his waiver O'Donnell and Clarke were required to withdraw under the Code of Professional Responsibility.
 
 
 35
 A trial court has considerable discretion to refuse proffered waivers in light of actual or potential conflicts of interest. Wheat, 108 S.Ct. at 1698. Prior to Wheat, we held that the trial court must honor a valid waiver of an actual conflict of interest absent "compelling circumstances." Reese, 699 F.2d at 805. Thus, we have placed more weight in the balance in favor of defendant's right to choose his counsel, if such can be reconciled with the court's independent interest in the fairness of the proceeding. See id. Thus, even if this court finds an actual conflict of interest, the court may accept a valid waiver of that conflict.
 
 
 36
 Guerrero asserts that his waiver was not valid because it was not knowing and intelligent. Guerrero cites the following exchange between the court and himself to support his assertion.
 
 
 37
 The Court: Mr. Guerrero, stand up, sir. Do you understand what we've been talking about here [referring to an extensive discussion between the court and counsel regarding White's testimony and the need for O'Donnell to testify]?
 
 
 38
 Mr. Guerrero: Yes, sir.
 
 
 39
 The Court: Do you agree your attorney, Mr. O'Donnell, will not go on the stand and refute that statement about--if White testifies that Mr. O'Donnell came to him and said you sent him, and you were concerned about whether he had enough money to pay attorneys' fees, and make bond, and told him you were going to stand behind him all the way, if White testifies to that, do you understand that Mr. O'Donnell is not going to get on the stand and rebute [sic] that?
 
 
 40
 Mr. Guerrero: Yes, I understand that.
 
 
 41
 The Court: Are you willing for that to happen?
 
 
 42
 Mr. Guerrero: May I talk to my lawyer?
 
 
 43
 The Court: Sure.
 
 
 44
 (Pause)
 
 
 45
 Mr. Guerrero: Your Honor, that's fine with me.
 
 
 46
 The Court: Now, you understand you have your one chance to state your position. I'm not going to let you chance [sic] your mind when the case starts. You understand that?
 
 
 47
 Mr. Guerrero: I'll not change my mind about that.
 
 
 48
 The Court: So it's understood, regardless of the fact that Mr. White may testify that Mr. O'Donnell told him you were going to stand behind him, came to see him because you wanted--sent him to see him because you were concerned about whether or not you had enough money to pay attorneys' fees and make bond, he told you that Lucho [Guerrero] was going to stand behind him all the way, if he testifies to that, you understand you're giving up your right to have your lawyer go on the stand and contradict that? You understand that?
 
 
 49
 Mr. Guerrero: Yes, your Honor.
 
 
 50
 The Court: You're willing to do that? You're willing to do that?
 
 
 51
 Mr. Guerrero: Yes.
 
 
 52
 The Court: You waive your right?
 
 
 53
 Mr. Guerrero: Yes.
 
 
 54
 The Court: All right.
 
 
 55
 J.App. 73-75.
 
 
 56
 Guerrero argues that this conversation put him in the impossible position of choosing between his sixth amendment right to counsel and his right to put on witnesses. We find this to be a false characterization of the situation as it was always clear that Guerrero could have obtained other counsel. Further, Guerrero was experienced in legal proceedings, had hired his present legal counsel and had already been through one trial.
 
 
 57
 Nontheless, Guerrero contends that his waiver was not knowing and voluntary. Citing Zuck v. Alabama, 588 F.2d 436, 440 (5th Cir.), cert. denied, 444 U.S. 833 (1979), Guerrero asserts that in order for his waiver to be knowing and voluntary, he must have (i) been aware that the conflict existed, (ii) realized the consequences to his defense of his lawyer's continuation and (iii) been aware he could get other counsel. We think the colloquy between the court and Guerrero speaks for itself in meeting the Zuck test. In addition, the defense team vigorously opposed the government's motion to disqualify claiming that the government was seeking to deprive Guerrero of his chosen counsel just two days before trial. Now Guerrero seeks to undo his conviction by asserting that the court committed reversible error by accepting his waiver. Accepting this proposition would effectively require the trial court to second-guess a defendant's valid waiver in every case as it would require the court to determine whether the defendant made the correct decision to waive. This would effectively place defendant's ability to waive a conflict in the hands of the trial court rather than in the discretion of the defendant. Rather, we hereby reaffirm our holding in Reese and require the trial court to accept a valid waiver absent compelling circumstances. In this case we find that Guerrero validly waived his right to conflict-free counsel.
 
 
 58
 Finally, Guerrero argues that regardless of his waiver, O'Donnell and Clarke had an ethical obligation to withdraw. Guerrero cites Disciplinary Rule 5-102(A) of the Model Code of Professional Responsibility in support of its proposition. DR 5-102(a) states:
 
 
 59
 If, after undertaking employment in a contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1)-(4).
 
 
 60
 The trial court determined that despite the possibility of having to testify, O'Donnell and Clarke need not withdraw because they fell within the scope of DR 5-101(B)(4) which states in relevant part:
 
 
 61
 (B) A lawyer shall not accept employment in contemplated or pending litigation ... except that he may undertake the employment ... [or] may testify....
 
 
 62
 (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
 
 
 63
 See J.App. at 54. Though the trial court did not specifically lay out its reasons, a review of the record suggests that the court considered the fact that it was two days before trial, that Guerrero wanted to keep O'Donnell as counsel, that it did not appear obvious that O'Donnell would have to testify in light of the exclusion of White's testimony on the threat and in light of the fact that O'Donnell was able to clear up White's testimony as to Hiett on cross-examination. See J.App. 54-76.
 
 
 64
 Taking these factors into account, it is our view that the requirement that O'Donnell testify was not so "obvious" that it outweighed the prejudice to Guerrero of depriving him of his chosen counsel two days before trial. Since it was Guerrero who sought to keep O'Donnell in the first place, and now it is Guerrero who asserts he was deprived of a fair trial by granting him his wish, it would stretch the ethical rules beyond their purpose of protecting a defendant from having his counsel play the dual role of advocate and witness to allow Guerrero to have his cake and eat it too. With respect to Clarke, we found that he was functioning at trial in the role of "case agent." As Clarke was not performing in the role of lawyer at trial he was not subject to the ethical requirement to withdraw. Thus, we find that the Code of Professional Responsibility did not independently require counsel to withdraw irrespective of Guerrero's waiver.
 
 III.
 
 65
 We find the trial court committed no reversible error and hereby AFFIRM.
 
 
 
 [1]
 Billy Hiett is a co-conspirator in the case