**Joseph Michael SERRA,**
**Petitioner–Appellee,**

v.

**MICHIGAN DEPARTMENT**
**OF CORRECTIONS,**
**Respondent,**

**Raymond G. Toombs, Respondent–**
**Appellant.**

No. 93–1364.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1993.

Decided Sept. 15, 1993.

Rehearing and Suggestion for
Rehearing En Banc Denied Oct. 29, 1993.

James C. Thomas (argued and briefed), Lawrence R. Greene, Detroit, MI, for petitioner-appellee.

Lisa C. Ward, Asst. Atty. Gen. (argued and briefed), Habeas Corpus Div., Lansing, MI, for respondent-appellant.

Before: MERRITT, Chief Judge; and GUY and BATCHELDER, Circuit Judges.

RALPH B. GUY, JR., Circuit Judge.

Raymond G. Toombs appeals the grant of petitioner Joseph Serra's writ of habeas corpus. The district court found petitioner's Sixth Amendment right to counsel was violated when his retained counsel was disqualified and that he was denied a fair trial when the prosecutor referred to a prior conviction similar to the offense charged. After considering the arguments and reviewing the record, we find that petitioner is not entitled to habeas corpus relief.

## I.

Petitioner Serra and his then current girlfriend, Deborah Poole, were arrested while

driving a 1977 Oldsmobile. A search of the car revealed a triple beam scale packed in a duffel bag containing belongings of both Serra and Poole. In Poole's purse, the officers found ten small packets of a white powder substance which later was determined to weigh 3.5 grams and contain cocaine. The title to the car listed both Serra and Poole; however, Serra had signed off on the back of the title, conveying ownership to Poole. Their driver's licenses were both issued with the same current address and listed the same prior address as well. Pursuant to a plea agreement, Poole pled guilty to possession of cocaine and was sentenced to 60 days in jail. Serra was convicted of possession with intent to deliver less than 50 grams of a mixture containing the controlled substance cocaine and of being a third felony habitual offender. Serra was sentenced to 12 to 40 years imprisonment.

Serra appealed his conviction. A divided Michigan Court of Appeals affirmed. The dissenting judge concluded petitioner was denied a fair trial by the prosecutor's cross-examination of petitioner regarding his prior marijuana conviction. Leave to appeal to the Michigan Supreme Court was denied. Serra then filed his first substantive petition for writ of habeas corpus.[1]

The district court granted habeas corpus relief, concluding that petitioner had been unconstitutionally deprived of his Sixth Amendment right to representation by retained counsel of his own choice, and that petitioner was denied a fundamentally fair trial when the prosecutor deliberately and improperly informed the jury that Serra had a prior drug possession conviction. Respondent has appealed the issuance of the writ.

## II.

■ The granting of a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, involves a determination that some right guaranteed petitioner by the Fourteenth Amendment to the United States Constitution was violated in the petitioner's state court proceedings. *See Cupp v. Naughten,*

414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Our review of the district court's decision is de novo. In his petition and brief before the district court, Serra raised three issues: violation of his Sixth Amendment right to be represented by retained counsel of his own choosing; denial of a fundamentally fair trial when the prosecutor improperly informed the jury of a prior drug possession conviction; and the introduction of false testimony by a state police detective concerning forfeiture proceedings that never occurred. The district court rejected the last argument and it has not been raised on appeal; therefore, that issue has been abandoned.

## III.

■ Petitioner first argues that he was denied his Sixth Amendment right to retained counsel of his choice. Soon after their arrest, Serra and Poole retained Robert P. Holman to represent them. Serra and Poole were scheduled for a joint preliminary examination. Holman filed petitions for separate preliminary examinations, alleging that defendant Poole's defense was "antagonistic to the position of" Serra. The prosecutor then filed a motion to disqualify Holman as Poole's attorney, citing Holman's allegation that the two defendants had antagonistic defenses. After a hearing on the motion to disqualify, the trial court ruled that both cases would be consolidated for purposes of the preliminary examination and denied the prosecution's motion to disqualify Holman. The court stated that, while it was allowing Holman to continue to represent both Poole and Serra for purposes of the preliminary examination, the issue of disqualification could be raised again if the cases were bound over for trial.

After both cases were bound over for trial and the prosecution's motion for a consolidated trial had been denied, the prosecutor again moved to disqualify Holman from representing Poole. At a hearing on this motion, the prosecutor stated as an additional reason for seeking disqualification that

---

**1.** Petitioner had filed an earlier petition for habeas corpus relief prior to the exhaustion of his state remedies. In that petition he challenged

only the denial of bond pending appeal. That requested writ was denied.

"we've tried to enter into negotiation with Miss Poole because of her condition as a Defendant in this case and we have been unable to because we have the same attorney trying to protect Mr. Serra." The court then disqualified Holman from representing either Serra or Poole. The court reasoned that the defenses of each defendant were, as alleged by defendants' own counsel, intrinsically antagonistic. Each defendant would claim the narcotics and scale belonged to the other. Furthermore, since the defendants were not present at this time, there was no opportunity for the court to inquire whether they wished to waive any claim of conflict after being advised of their rights and the potential problems with having the same attorney. The court recognized that Holman presumably had gained the privileged confidence of each defendant and that "[h]is confidence from each Defendant cannot be used to advance the other Defendant's interest." Holman filed a motion to vacate the opinion and order of the court, stating neither Serra nor Poole was opposed to joint representation. After the court denied that motion, Serra filed a petition for a court appointed attorney, alleging he did not have sufficient assets to retain an attorney. Counsel was appointed and the case proceeded to trial.

At the start of trial, Serra's court appointed counsel again raised objection to the disqualification of Holman. The court refused to reconsider the disqualification even when it had been made clear that Deborah Poole was now Serra's wife,[2] and, while awaiting sentencing, she had already pled guilty.

The Sixth Amendment right to assistance of counsel is a fundamental right so essential to a fair trial that it is part of the Due Process Clause of the Fourteenth Amendment and thus applicable to the states. *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799

(1963). The right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney. *Caplin & Drysdale v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2651, 105 L.Ed.2d 528 (1989). A criminal defendant who desires and is financially able to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932).

While a criminal defendant who can afford his own attorney has a right to his chosen attorney, that right is a qualified right. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). The trial court "must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.* at 164, 108 S.Ct. at 1700.

The district court concluded, and we agree, that the initial disqualification of Holman was not a violation of petitioner's Sixth Amendment right. However, the district court concluded that the refusal to re-evaluate the situation at the time of trial when the issue was again raised and the refusal to allow Holman to renew his representation of Serra violated his Sixth Amendment right. We disagree. The district court focused on the fact that the prosecution had not indicated an intent to call Deborah Poole as a witness and, if the prosecution had, under Michigan law Serra's permission would have been required because she was now his wife. Mich.Comp. Laws Ann. § 600.2162. Thus, the district court reasoned that Holman's representation

2. There is some confusion as to exactly when the trial court became aware that Poole and Serra were husband and wife. During voir dire, defense counsel was asked to state the witnesses she intended to call. She responded: "We intend to call potentially one witness at the trial in addition to the possibility of *Mrs. Serra*. His name is Robert McQuillen." (Emphasis added.) Defendant Joseph Serra did take the stand. It is unclear if the reference to "Mrs. Serra" was actually to "Mr. Serra" or whether all persons involved thought it was to "Mr. Serra," not "Mrs. Serra." It was not until the second and *final day* of trial that the fact of the co-defendants' marriage was directly pointed out to the court on the record. As a spouse of the defendant, Poole could not be made to testify for the prosecution without the consent of Serra himself. Mich.Comp.Laws Ann. § 600.2162.

of Serra would not present a conflict of interest because he would not be called upon to cross-examine his former client. The district court concluded that, lacking a true conflict of interest, the trial court's denial of petitioner's counsel of choice was a violation of his Sixth Amendment right requiring habeas corpus relief.

■ When a criminal defendant seeks to be represented by retained counsel and that representation may result in a conflict of interest, the district court must balance "two Sixth Amendment rights: (1) the qualified right to be represented by counsel of one's choice, and (2) the right to a defense conducted by an attorney who is free of conflicts of interest." *Wheat*, 486 U.S. at 157, 108 S.Ct. at 1696.

The district court's characterization of the potential conflicts of interest oversimplifies the scope of Holman's possible conflicts. Had the prosecution indicated an intent to call Poole and had the two not become husband and wife, we would be faced with exactly the same factual scenario as in *Wheat* —an attorney potentially having to cross-examine a former client—and we would be required to find, as the Supreme Court did in *Wheat*, no violation of petitioner's Sixth Amendment right to counsel.

While the facts of this case are not identical to those of *Wheat*, we find *Wheat* controlling. Although the prosecution had not indicated an intent to call Poole as a witness, as the prosecution had in *Wheat*, during voir dire defense counsel stated that she intended to call "Mrs. Serra." Therefore, at the time that the trial court had to rule on the renewed motion for reconsideration of the disqualification of Holman, the potential existed that Holman would have to examine Poole, his former client, in order to elicit favorable testimony, albeit on direct examination.[3] The fact that they were then husband and wife would have been immaterial at that point; Poole could not have invoked the spousal privilege because under Michigan law the privilege belongs to the defendant spouse. Mich.Comp.Laws Ann. § 600.2162.

At the time of Serra's trial, Poole already had pled guilty but she had not yet been sentenced, and Holman no longer represented her because he had been disqualified. Holman presumably gained confidential information from Poole in his representation of her at the preliminary examination. If Holman had been allowed to represent Serra, he still would have had an ethical duty to his former client to maintain her confidences. There was a potential that Holman may have gained information in his representation of Poole that would have exculpated Serra while damaging Poole's sentencing prospects. In addition to the likelihood that Holman had obtained confidential information from Poole, Holman also had a continuing duty to not act in a way adverse to his former client's sentencing prospects.

The Supreme Court has recognized:

Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.... [A] conflict may ... prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). The fact that Holman no longer represented Poole does not alter the situation significantly; Holman continues to have an ongoing duty to his former client, a duty which, if complied with, could have prevented him from effectively representing Serra. The potential for conflict in this case was significant;

---

3. Under Michigan law, a defendant is not required to submit a pretrial disclosure of defense witnesses unless defendant intends to present an alibi defense, Mich.Comp.Laws Ann. § 768.20, or an insanity defense, Mich.Comp.Laws Ann. § 768.20a. Neither defense was claimed by Serra. Additionally, an affidavit submitted by the long-time prosecuting attorney for the County of Cheboygan states that "it has never been the practice of the Cheboygan County Circuit Court to require the defense to disclose its witnesses prior to trial." The trial court's only indication of the witnesses the defense intended to call came during the voir dire when defense counsel stated "Mrs. Serra" was a potential witness.

the best defense for each defendant was to claim and attempt to prove that the narcotics and scale belonged to the other defendant. This was in fact Mr. Serra's trial strategy. As it was, the court did allow Holman to assist Serra's appointed counsel, and there are indications on the record of Holman's presence in the courtroom during the trial.

Petitioner argues that, even if there was a potential for conflict, both he and Poole had waived their right to conflict-free representation. We have serious doubts whether there ever was an effective waiver by either Poole or Serra. The motion to vacate the disqualification order stated that neither Serra nor Poole was "opposed to joint representation," and Holman represented in an affidavit filed by him that both defendants were "st[e]adfast ... in their demand that affiant represent their interests...." No affidavits by Poole or Serra ever were filed, nor did the court ever personally address either defendant as required by Michigan Court Rule 6.005(F). However, there was considerable confusion between the court and counsel regarding hearings on this matter.[4] Even if we assume that had defendants been given an opportunity to address the court they would have expressed a valid waiver, this does not end our inquiry.

"Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1698. State courts have an equal interest. "Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Id.*

[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.

*Id.* at 162, 108 S.Ct. at 1699 (quoting *United States v. Dolan,* 570 F.2d 1177, 1184 (3d Cir.1978)). The trial court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* 486 U.S. at 163, 108 S.Ct. at 1699.

The Supreme Court in *Wheat* recognized the "whipsaw" nature of claims of waiver of conflict-free representation; the criminal defendant can attempt to claim error no matter which way the court rules. If a trial court disqualifies counsel, defendant will argue, as is the case here, a violation of his Sixth Amendment right to counsel of his choice. If a trial court refuses to disqualify an attorney, a defendant may later attempt to raise an ineffective assistance of counsel claim based on conflict of interest, asserting that his

---

4. It seems there was a fair amount of confusion and miscommunication concerning *when* the motion to disqualify Holman was going to be argued before the judge. Initially the prosecutor appeared and Holman did not. The prosecutor proceeded to argue the motion and stated that he had no idea why Holman was not present. The court did not rule, but provided that defense counsel would have ten days to respond in writing. About an hour later, the prosecutor stated on the record that he had forgotten the agreement that he had made with defense counsel to re-notice the motion and argue it at a later date. Defense counsel then submitted a response in writing pursuant to the court's direction, but requested oral argument. At a hearing to determine whether the court would allow oral argument, Serra was present and asked to speak to the court. The court refused to hear Serra at that time, stating that he would have to wait until a hearing on the merits of the motion. Holman states in an affidavit that he and both defendants appeared on the date set for the argument, but the judge had already issued his order disqualifying Holman and therefore directed that all motions filed by him would not be considered by the court.

waiver was not knowingly or voluntarily made. *Id.* at 162, 108 S.Ct. at 1698 (citing cases where courts entertained ineffective-assistance claims from defendants who had specifically waived the right to conflict-free counsel). As the Supreme Court recognized, the "need to investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal." *Id.* at 161, 108 S.Ct. at 1698.

Petitioner does not argue that his appointed counsel was ineffective, nor need he make such a claim to be successful. "Evidence that a defendant was denied this right arbitrarily and without adequate reason is sufficient to mandate reversal without a showing of prejudice." *Linton v. Perini,* 656 F.2d 207, 211–12 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). However, this is not a case where the trial court arbitrarily disqualified petitioner's counsel. The trial court was justifiably concerned with the potential for conflict and the integrity of the trial process that is implicated anytime conflict-free representation is compromised.

■ While the trial court is required to recognize a presumption in favor of a defendant's counsel of choice, that presumption can be overcome by *either* a showing of actual conflict or a showing of serious potential for conflict. "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1700. In reviewing the trial court's action, we must always keep in mind the context in which the ruling is made, and that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict...." *Id.* at 162–63, 108 S.Ct. at 1699. While we now have the wisdom of hindsight, the trial court was required to decide this issue "in the murkier pretrial context when relationships between parties are seen through a glass, darkly." *Id.* at 162, 108 S.Ct. at 1699. We cannot say that the trial court's refusal to vacate its order disqualifying Holman and to allow a substitution of counsel on the second and final day of trial was an abuse of the trial court's discretion in this area. Therefore, the district court erred in granting habeas relief on this ground.

## IV.

■ Petitioner's second argument for habeas relief involves a reference by the prosecutor to a prior misdemeanor conviction for marijuana possession. Petitioner argued, and the district court agreed, that the prosecutor's reference deprived him of his Fourteenth Amendment right to a fair trial.

■ As a preliminary matter, respondent argues that petitioner's claim of error is merely a claim for a violation of state rules and thus not cognizable on federal habeas corpus review. While it is true that habeas relief cannot be granted simply "on the basis of a perceived error of state law," *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984), when an error rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief. *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985); *Estelle v. McGuire,* ─── U.S. ───, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, we must address the merits of petitioner's argument.

The trial court granted Serra's motion in limine to preclude any witness from mentioning his prior offenses, adding, "if and when prior offenses become germane, we can take a brief recess and consider the matter on its merits." Prior to Serra's taking the stand, defense counsel moved to prohibit the use of two prior convictions for impeachment. The two convictions specifically mentioned were one for breaking and entering and one for entering without breaking with intent to commit a felony. In arguing against defense counsel's motion, the prosecutor stated:

> The criminal history reflects additional charges for drug related offenses. In 1983 there is a final disposition for dangerous drugs—delivering, manufacturing. I believe in that case it was marijuana, as I remember. I was the prosecutor, and we're not even seeking to utilize that conviction because we feel that would be im-

proper to impeach the defendant—has nothing to do with credibility—only relates to prior similar offenses, and we're not asking for that.

In 1983, pursuant to a plea agreement, Serra pled guilty to a misdemeanor marijuana possession charge.

After hearing the arguments on both sides, the trial court ruled that none of Serra's prior convictions could be used for impeachment purposes. The court stated:

> [T]he admission of the two prior convictions would be highly prejudicial and I make this decision also because of the transient nature of the car interior—articles—the other occupant and the other circumstances of this alleged offense. I think I have to exclude the prior convictions so that this charge is determined based on the facts and circumstances of this situation and not because of the fact that defendant did have some prior bad acts, so anything further?

Respondent alleges that when Serra took the stand he turned to the jury and said, "I don't know why I'm here. I don't do or sell drugs." Although this statement does not appear in the trial transcript because it was made prior to direct examination, petitioner admits that he made it. During direct examination Serra said, "I do not sell cocaine and I never had." The alleged error occurred at the beginning of the prosecutor's cross-examination.

Q. Mr. Serra, you came up here and took the oath. I noted you turned to the jury and said something to the effect that "I don't know why I'm here". Then you, in the first or second question, said something to the effect that I don't do or I don't sell drugs; is that right?

A. That's right.

Q. You've never—you volunteered the statement, you don't do or sell drugs; is that right?

A. I've done drugs before, in the past. I don't—I don't sell them.

Q. As a matter of fact, you were convicted in the District Court of this county for possession of marijuana?

Before Serra answered the question, defense counsel objected and then moved for a mistrial. The jury was excused and arguments were heard. The trial court noted that the prior conviction for possession was consistent with Serra's testimony that he had done drugs in the past and found the mention of the conviction improper. However, the court did not feel the impropriety warranted a mistrial and instead gave the following curative instruction to the jury:

> Ladies and gentlemen, before we recessed some reference was made to an alleged prior case involving this defendant. I have ruled that no prior case can come in to this case or be considered by you.
>
> The reason for that ruling is you're to consider this case on its own merits, not because of some other or different case. Okay. And I just want to explain that to you before we proceed. You're instructed not to give any consideration of that; only consider the facts of this case when you deliberate the case. Okay.

Serra argues that the evidence against him was tenuous and the mention of his prior conviction tipped the scales for the jury, thereby denying him due process guaranteed by the Fourteenth Amendment.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). On habeas review, our role is to determine whether the conduct was "so egregious so as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir.), *cert. denied*, 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979).

Our Court has identified the factors we are to consider in weighing the extent of prosecutorial misconduct in habeas cases.

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the

competent proof to establish the guilt of the accused.

*Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982) (en banc) (quoting *United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976)).

We disagree with the district court that the mention of petitioner's prior conviction for marijuana possession denied petitioner a fair trial. While the mention of his prior conviction was prejudicial, Serra already had admitted to the jury that he had done drugs in the past. As the trial court noted, "[t]he fact that he possessed drugs in the past or used them in the past does have some prejudice attached to it in determining whether he possesses drugs currently." But, even if the prosecution had not mentioned the prior conviction, the jury still would have been informed of Serra's prior drug use by Serra himself. We cannot say that the prejudice added by the knowledge of a prior conviction for an act petitioner already had admitted rises to the level of constitutional error. Additionally, the trial judge gave a strong, prompt, curative instruction. The giving of this instruction factors into our determination that the isolated statement made by the prosecutor did not cause petitioner's trial to be fundamentally unfair. *See Eberhardt v. Bordenkircher,* 605 F.2d 275, 280 (6th Cir. 1979).

██ The petitioner argues that, in light of the scanty proof of his guilt, the mention of the conviction cannot be considered harmless. We disagree. The prosecution introduced evidence that a confidential informant had told police officers that Mr. Serra was the one selling cocaine. The purse was found sitting on the front seat of the car between Serra and Poole, and the scale was intermingled with his belongings. Serra admitted that the handwriting on the alleged drug transaction records found in the purse may have been his. The title to the car indicated that Poole and Serra had jointly owned the car but that Serra had conveyed title to Poole. The driver's licenses of both Poole and Serra indicated that they currently lived at the same address and both licenses listed identical prior addresses as well. The Michigan Court of Appeals addressed Serra's sufficiency of the evidence argument and

found that there was sufficient evidence to support the jury verdict. *People v. Serra,* No. 120883 (Mich.Ct.App. Feb. 22, 1991). Once Serra admitted using drugs in the past, the minimal additional prejudice caused by the mention of a prior drug possession charge is not enough to say the trial was fundamentally unfair. Petitioner was not denied due process and the writ should not issue.

**REVERSED.**

MERRITT, Chief Judge, dissenting in part.

I agree with Section IV of the Court's opinion which holds that the prosecutor's statement concerning the prior marijuana conviction did not deprive the petitioner of a federal constitutional right. I agree with the District Court and strongly disagree with our Court on the right-to-counsel issue discussed in Section III. On this issue the Court simply allows the prosecution through its objections to control who the lawyer for the accused will be at his trial.

Normally where multiple defendants represented by one lawyer fully understand and consent to a potential conflict of interest, they may waive the conflict and retain one lawyer. Rules 1.7 and 1.9 of the Michigan Rules of Professional Conduct make it clear that a lawyer may represent more than one client with potential conflicting interests if "each client consents after consultation." *See also, Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978) ("a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests."); *United States v. Reese,* 699 F.2d 803, 805 (6th Cir.1983) ("even if an actual conflict of interests or a strong likelihood of conflict is demonstrated the defendant must be given an opportunity to waive his constitutional right to conflict-free representation. A voluntary waiver of this constitutional right, knowingly and intelligently made, must be honored by the court in the absence of compelling circumstances"). *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the main case relied on by the Court, indicates that a defendant's

right to waive a conflict of interest may be limited in situations where the defendants are not fully aware that there is a "serious potential for conflict," *Id.* at 164, 108 S.Ct. at 1700, but *Wheat* does not affect this Court's "presumption," set forth in *Reese,* in favor of upholding a defendant's knowing waiver in conflict cases. *Wheat* itself acknowledges the "Sixth Amendment presumption in favor of counsel of choice." *Id.* at 160, 108 S.Ct. at 1697–98. *United States v. Guerrero,* No. 88–5986, 1990 WL 166414, 1990 U.S.App. LEXIS 22013, (6th Cir. Nov. 1, 1990) [917 F.2d 564 (table)] (unpublished *per curiam*), interprets the *Reese* "compelling circumstances" standard in light of *Wheat:* "Thus we have placed more weight in the balance in favor of defendant's right to choose his counsel, if such can be reconciled with the court's independent interest in the fairness of the proceeding." *Id.* 1990 WL 166414 at *5, 1990 U.S.App. LEXIS 22013 at *16, [917 F.2d 564 (table)]. The "presumption" is flatly inconsistent with some broad unreviewable or half-reviewable "discretion" vested in the trial judge to do whatever he wants.

This Court has clearly misapplied this standard. On one side of the balance, petitioner's right to the lawyer he chose and paid for is significant. Denial of this right by the trial court forced him to accept representation by court appointed counsel because he could not afford to hire a second lawyer. On the other side of the balance, danger of a "serious potential" for conflict sufficient to outweigh petitioner's right to choice of counsel is simply lacking.

When the trial occurred, petitioner and his girlfriend were married. The wife had plead guilty to possession of the cocaine found in her purse. She admitted that she was culpable, and petitioner denied culpability. There is simply no conflict in this situation. There is no suggestion in this record anywhere that the wife would attempt to blame her husband or advance any argument or fact in conflict with his defense of denial of possession.

In addition, under the Michigan spousal privilege statute, the wife could not testify for the state against petitioner without his consent. M.C.L. § 600.2162. Since she could not testify against her husband, the only other conceivable situation from which a conflict could arise is if the wife testified on her husband's behalf. Despite the Court's strained effort to interpret clear facts otherwise, at the time of the trial there was no real possibility that petitioner intended to call his wife as a witness. The wife was not on any witness lists and was not mentioned by either side in opening statements. The only mention of the wife as a possible witness was an offhand remark by petitioner's court-appointed lawyer during voir-dire that she *might* call "Mrs. Serra." As the Court acknowledges in footnote 2 of its opinion, there is a substantial question whether petitioner's lawyer really meant "Mr. Serra" rather than "Mrs. Serra" when she made this statement. This at least tentative and speculative, and at most purely accidental pretrial mention of the wife's name, which is totally unsupported by any other indication that she would testify, is the Court's flimsy rationale for depriving petitioner of an important constitutional right. Even this speculative idea is undermined by the fact that the wife's legal posture admitting culpability was consistent with the husband's defense.

There being no possibility of harm to petitioner arising from any imagined conflict, the Court is forced to enter the realm of its "independent interest" in fairness and to rely on highly speculative harm that could have befallen the wife at her sentencing if petitioner were allowed his chosen counsel. The theory the Court uses to reach this harm is that if Holman represented petitioner at his trial and if the wife testified, Holman could somehow elicit information from her, such as a statement that it was she and not her husband that possessed the cocaine. But this is precisely what she already plead guilty to. In addition, as I have discussed, there was no realistic possibility that the wife would testify. The risk of harm to her sentencing prospects was the same whether Holman represented her husband or another lawyer represented him.

Minor conflicts in testimony are always possible in a criminal trial. The husband and the wife were willing to run the risk of a minor conflict in testimony or any other possible tension between their individual inter-

ests. They hired the same lawyer to represent them both, expressed a desire to have that lawyer represent them both when questioned by the trial judge, filed a motion to vacate the order disqualifying that lawyer, and continually expressed their desire to have the hired lawyer represent petitioner at his trial. I do not know what kind of case would allow dual representation if the husband and wife cannot be represented by the counsel they want and have paid for in this case.

Even more disturbing is the fact that in its present posture, this is not even a dual representation case. The prosecution never moved to disqualify Holman from representing petitioner. On the prosecution's motion to disqualify him from representing the wife, who was then petitioner's girlfriend, the trial court erroneously disqualified Holman from representing either the wife or petitioner. This Court has continued the error by denying petitioner his chosen counsel because of the remote possibility of a conflict with a client the lawyer no longer represented. Holman only represented petitioner's wife at the pretrial hearing. By the time of his trial she had already plead guilty and all that remained in her case was sentencing.

The purpose of the Michigan spousal immunity law, like most other such laws, is to preserve marital harmony. *See, e.g., People v. Love,* 127 Mich.App. 596, 339 N.W.2d 493, 495 (1983). The husband and the wife here should be able to avoid a fight between themselves by hiring one lawyer if after advice and consultation, they decide to do so. They should be allowed to avoid the tremendous expense of hiring two lawyers. Joint decisions made within a marriage should be respected by the courts. Choices such as the one made here by petitioner and his wife should not be put aside in a paternalistic effort to impose what a court thinks is in the individual spouses' best interests. A due regard for the integrity of the family unit counsels in favor of allowing one lawyer to represent both if the husband and wife make an informed choice to that effect. *C.f. Holloway,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978) (noting that "indeed, in some cases, certain advantages might accrue from joint representation").

The rule laid down by the Court's decision simply allows the prosecution and the trial judge to control who will represent the petitioner and his wife. The trial judge should not be allowed some broad discretion to choose the lawyer for the accused against his will. The Constitution gives that choice to the accused, as the "presumption" acknowledges. Neither should the prosecution be invited to use trial stratagems to defeat a defendant's choice of counsel. The couple employed and paid the counsel of their choice, and the state trial court held thereafter that the lawyer could represent neither. In the situation presented here, the lawyer should have been allowed to represent both. There is no substantial basis for disqualification. It takes no deep analysis of case authority or complicated legal theory to recognize that petitioner and his wife were both wrongfully deprived of counsel in violation of the right-to-counsel clause of the Sixth Amendment. This is a simple case. *Wheat* suggests we grant some deference to the trial court in cases like this one, but we should not avoid our responsibility to correct constitutional injustices by hiding behind a broad abuse of discretion standard of review that forces a husband and wife to be represented by a lawyer not of their choice. The District Court perceived the case correctly. Our court has made a serious constitutional error.