70 F.3d 1273
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brian TIMMER, Defendant-Appellant.
 No. 95-1441.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1995.
 
 Before: LIVELY, NELSON, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction on charges of wire fraud, bankruptcy fraud, and interstate transportation of stolen property. The defendant presents five assignments of error, the most significant of which concerns the granting of a government motion for disqualification of his lawyer. The remaining assignments of error relate to the denial of a motion to sever the bankruptcy fraud counts of the indictment from the other counts; a disputed evidentiary ruling; a refusal to give requested jury instructions; and a sufficiency-of-the-evidence question. Finding none of the defendant's contentions persuasive, we shall affirm the conviction.
 
 
 2
 * The defendant, Brian Timmer, was the president of Timmer Industries, Inc., a company that manufactured mechanized transplanter systems for the commercial greenhouse market. In the summer of 1992 Mr. Timmer allegedly induced a customer to wire Timmer Industries $30,000 in payment for a transplanter that was supposed to have been completed but had not, in fact, been built. At about the same time Mr. Timmer allegedly misappropriated a transplanter that was in for repairs, trading it to another customer without the consent of the owner.
 
 
 3
 In July of 1992 Mr. Timmer voluntarily placed his company in bankruptcy. In this connection he made a series of filings that allegedly contained material declarations which he knew to be false.
 
 
 4
 Mr. Timmer was represented in the bankruptcy proceeding by attorney James Sullivan. Mr. Sullivan--who is not claimed to have been a party to any wrongdoing--allegedly had extensive knowledge of the facts underlying at least some of the criminal charges subsequently brought against Mr. Timmer. During one of the bankruptcy hearings Mr. Sullivan raised the Fifth Amendment privilege against self-incrimination to prevent Mr. Timmer's being questioned about receipt of payment for non-existent goods.
 
 
 5
 In January of 1994, after Mr. Timmer had been advised that he was the target of a grand jury investigation, an Assistant United States Attorney told Mr. Sullivan that she believed there were conflicts of interest that would prevent him from representing Mr. Timmer in the criminal proceeding then being contemplated. Mr. Sullivan nonetheless appeared with Mr. Timmer at his arraignment in mid-August of 1994, following the indictment. Mr. Sullivan also represented Timmer at a pretrial conference held a week or so later. On August 31, 1994, the government filed a written motion to disqualify Mr. Sullivan for "potential and actual conflicts of interest ... sufficient to affect the representation of his client, prejudice the government, and adversely affect the fair administration of justice."
 
 
 6
 A hearing on the motion to disqualify was held before a magistrate judge in October of 1994. Although given an opportunity to call witnesses, the parties chose to rely solely on the oral representations of counsel.
 
 
 7
 At the conclusion of the hearing the magistrate announced, citing Wheat v. United States, 486 U.S. 153 (1988), that the motion to disqualify would be granted. Based on the representations made to him, the magistrate found that Mr. Sullivan was likely to be called as a witness by the government even if not called by the defense; that Mr. Timmer needed independent counsel in order to make an informed decision on asserting an advice-of-counsel defense to the bankruptcy fraud charges; and that developments during the trial itself might well give rise to a need for Mr. Sullivan to testify even if the defense could not foresee those developments prior to trial. The magistrate found as a fact that the government was not simply trying to gain a tactical advantage by putting defense counsel out of play.
 
 
 8
 Pursuant to the Criminal Justice Act, the court appointed new counsel for Mr. Timmer on October 24, 1994. The case went to trial on January 9, 1995, after one of the three bankruptcy fraud counts in the indictment had been dismissed on motion of the government and after the court had disposed of a variety of pretrial motions filed by the defense. Mr. Timmer did not assert an advice-of-counsel defense, in the event, and Mr. Sullivan was not called as a witness by either side. The jury found Mr. Timmer guilty on each of the four counts remaining in the indictment.
 
 II
 
 9
 Although neither side found it necessary to call attorney Sullivan as a witness, as matters turned out, the magistrate had to decide the disqualification motion "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when [matters] are seen through a glass, darkly." Wheat, 486 at 162. From the perspective of the magistrate on October 11, 1994, it was reasonable to believe that Mr. Timmer would benefit from the advice of an unconflicted lawyer in deciding whether to assert an advice-of-counsel defense, just as at is reasonable for the magistrate to view Mr. Sullivan as a potential witness.
 
 
 10
 That Mr. Timmer may have been willing to waive any advice-of-counsel defense at a point when he was still represented by Mr. Sullivan is not dispositive. The Sixth Amendment presumption in favor of counsel of choice is not absolute, and "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 at 160. The Supreme Court has said, indeed, that "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 159. The findings of fact made by the magistrate in the case at bar manifest a well-founded concern that Mr. Timmer have an effective advocate at trial--as he ultimately did--and that the proceedings appear fair to all who might observe them.
 
 
 11
 The trial court is given wide latitude in deciding disqualification motions. Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1354 (6th Cir.1994); United States v. Mays, --- F.3d ----, ---- (6th Cir.1995). The standard under which we review disqualification orders is a "generous" one, Mays, --- F.3d at ----, and we affirm such orders if they are not "arbitrary" or "without adequate reasons." Id. The order in question here was certainly not arbitrary, and it was amply supported by adequate reasons.
 
 III
 
 12
 The remaining issues do not require extended discussion on our part.
 
 
 13
 * We believe that joinder of the bankruptcy fraud counts with the remaining counts of the indictment was proper under Rule 8(a), Fed.R.Crim.P., because the offenses in question all constituted parts of a common scheme or plan to defeat the interests of creditors. The defendant failed to demonstrate that he was prejudiced by the joinder, moreover, and the district court did not abuse its discretion in denying the motion for a severance under Rule 14, Fed.R.Crim.P.
 
 B
 
 14
 The district court did not commit reversible error in receiving evidence that Mr. Timmer forged certain signatures on a security agreement. The evidence in question was relevant and admissible for a proper purpose, and the district court did not abuse its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.
 
 C
 
 15
 The district court's refusal to give an explicit instruction as to good faith with respect to any count other than the first did not, in our judgment, compromise the fairness and adequacy of the charge taken as a whole. See United States v. Buckley, 934 F.2d 84, 87 (6th Cir.1991), and United States v. McGuire, 744 F.2d 1197, 1201-02 (6th Cir.), cert. denied, 471 U.S. 1004 (1985).
 
 D
 
 16
 Finally, we cannot say that the evidence was insufficient to enable a rational jury to find that the value of the property dealt with in Count 5 of the indictment exceeded the $5,000 threshold specified in 18 U.S.C. Sec. 2314.
 
 
 17
 AFFIRMED.