RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0462p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/*
*Cross-Appellant* (05-3346/3478),

*v.*

PETER J. VASILAKOS (05-3346/3478),

*Defendant-Appellant/*
*Cross-Appellee,*

DEBBIE K. LENT (05-3166),

*Defendant-Appellant.*

Nos. 05-3166/3346/3478

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00147—Gregory L. Frost, District Judge.

Submitted: May 31, 2007

Decided and Filed: November 21, 2007

Before: RYAN, DAUGHTREY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** James H. Banks, Dublin, Ohio, for Appellants. Deborah A. Solove, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, Alan Hechtkopf, UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, DC, for Appellee.

_____

## OPINION

_____

RYAN, Circuit Judge. The defendants, Peter J. Vasilakos and Debbie K. Lent, appeal their convictions for mail fraud, money laundering, and conspiracy to commit mail fraud. The district court sentenced Vasilakos to 66 months' imprisonment and Lent to 57 months. On appeal, the defendants offer a host of arguments for overturning their convictions: that prior civil proceedings in which the defendants prevailed should have precluded their criminal prosecution; that the district court, in violation of the Sixth Amendment, permitted the government to use redacted excerpts of codefendants' civil trial testimony; that the district court abused its discretion with respect to various evidentiary rulings that precluded the defendants from presenting a "good faith defense"; that the

1

district court's bail restrictions impermissibly infringed on the defendants' ability to contact witnesses and present a defense; that the district court erred by allowing a United States postal inspector to testify about the ownership and use of the post office boxes utilized in the defendants' scheme; that the district court failed to issue a proper instruction limiting the testimony of the government's summary witness; and that the sentences imposed by the district court are unreasonable. After careful consideration of each of these arguments of error, we conclude, for reasons we shall discuss, that Vasilakos's and Lent's convictions and sentences should be affirmed.

## I.

A federal grand jury in the Southern District of Ohio indicted Peter Vasilakos and Debbie Lent on eight counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, one count of conspiring to commit mail fraud and one count of conspiracy to commit tax fraud, both in violation of 18 U.S.C. § 371, and one count of conspiring to launder money, in violation of 18 U.S.C. § 1956(h). The government claims that from 1996 to 1998, Vasilakos and Lent defrauded the Combined Insurance Company of America (CICA), several CICA employees, and the federal government of a substantial, but indeterminate, amount of money. The government indicted four other defendants—Steven Baker, Terence Magrey, Rocky Edwards, and Jodi Hill—as part of the conspiracy. All of the indictees except Baker were tried before the same jury. This appeal concerns only Vasilakos and Lent, who were convicted on all counts and sentenced to prison.

The convictions arise from a scheme concocted by Vasilakos and Lent to steal money from their employer, CICA. The defendants worked as district managers for CICA and supervised numerous field agents who conducted door-to-door sales of disability indemnity insurance policies. CICA compensated sales agents solely by commission for sales that the district managers "called in" weekly to the regional office. District managers earned approximately four percent commission on total sales for all agents under their supervision and were eligible for additional compensation when a customer renewed an existing policy. District managers were also eligible for bonuses based on total sales and the rate of policy renewals. Finally, district managers could earn additional bonuses based on "man weeks," or weeks in which sales agents earned more than $100 in commissions.

The government contends that Vasilakos and Lent fraudulently led CICA to believe that many former agents who in fact had left the company, were still employed and selling policies for CICA. That misrepresentation generated "man week" bonuses and additional compensation for the district managers. Vasilakos instructed some of his working agents to sign blank sales reports, on which Baker, at Vasilakos's direction, filled in data reporting fictional insurance policy sales to fictional purchasers. These fictional sales also generated commission checks and other compensation payable to the ex-agents. In order to get possession of these checks, Lent contacted CICA, ostensibly on behalf of the agents, to change the agents' mailing addresses to post office boxes controlled by Vasilakos, Lent, and Baker. The conspirators then forged the "agents'" signatures on the diverted checks. The fictional sales and resulting commission payments caused CICA to erroneously report to the Internal Revenue Service, commission payments to the ex-agents.

The defendants concealed their scheme by depositing CICA checks and large amounts of cash into multiple bank accounts. The government argued that Vasilakos also maintained bank accounts in other persons' names in order to show a small balance in his own account and to prevent the IRS from collecting on a tax lien filed against him.

## II.

Vasilakos and Lent first argue that the district court erred by refusing to give preclusive effect to earlier civil court proceedings in which the defendants prevailed in a civil suit brought

against the defendants by CICA to recover fraudulently obtained sums. We review the district court's application of the doctrines of *res judicata* and collateral estoppel *de novo*. *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 371 (6th Cir. 1998).

In *Montana v. United States*, the Supreme Court stated that under the *res judicata* doctrine, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." 440 U.S. 147, 153 (1979). *Res judicata* precludes future claims when there is: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies[';] (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action." *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003) (quoting *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999) (*en banc*)).

Collateral estoppel precludes relitigation of issues between parties or their privies previously determined by a court of competent jurisdiction. *Montana*, 440 U.S. at 153.

Judgments are preclusive only as to parties and their privies. *Id.* Privity is limited to "a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992).

Because the United States was not a party to the civil litigation between the defendants and CICA and is not in privity with the insurance company, neither *res judicata* nor collateral estoppel is available to Vasilakos or Lent. The government is not a successor in interest to CICA and its interest in prosecuting the defendants for federal crimes was not adequately represented by CICA in the civil case. Manifestly, the government had no control over CICA's litigation strategy. *Becherer*, 193 F.3d at 423.

**III.**

Next, Vasilakos and Lent argue that the district court erred by admitting in evidence, over the defendants' objection, deposition statements made by their codefendants in the prior civil proceedings between CICA and the defendants. When the deposition statements were introduced in this case, the court instructed jurors to consider each deposition statement as evidence only against the specific defendant who made the statement. The government redacted names of other defendants before proffering the statements. Vasilakos and Lent contend, however, that the statements constituted inadmissible hearsay and that their admission violated their rights under the Confrontation Clause of the Sixth Amendment.

The Supreme Court has instructed us to review all evidentiary rulings, even those under the Federal Rules of Evidence, for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997). Reversal is appropriate only if the "abuse" was not harmless "error." Error is harmless if we are satisfied "'that the outcome of a trial was not affected by evidentiary error.'" *United States v. Johnson*, 440 F.3d 832, 847 (6th Cir.) (quoting *McCombs v. Meijer, Inc.*, 395 F.3d 346, 358 (6th Cir. 2005)), *cert. denied*, 127 S. Ct. 48 (2006). Confrontation Clause claims are questions of law that are reviewed *de novo*. *Johnson*, 440 F.3d at 842.

The defendants argue that the district court abused its discretion by refusing to exclude the codefendants' deposition statements as inadmissible hearsay. This contention is without merit. Federal Rule of Evidence 801(d)(2)(A) establishes that a statement is not hearsay if it "is offered against a party and is . . . the party's own statement." The deposition excerpts are not hearsay because each statement was offered and received only against the party who made it.

The defendants also claim that the deposition statements of their codefendants, even though admitted only against the declarant-codefendants at the joint trial, violated the defendants' Confrontation Clause rights. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against *him*." U.S. Const. amend. VI (emphasis added). The "principal evil" the confrontation right seeks to eliminate is the "use of *ex parte* examinations as evidence against the accused." *Crawford v. Washington*, 541 U.S. 36, 50 (2004).

Ordinarily when, at a joint trial, a codefendant's prior statement, testimonial or otherwise, is introduced only against the declarant-codefendant, and not against the complaining codefendant, the latter has suffered no violation of his Sixth Amendment Confrontation Clause rights. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). However, the Supreme Court has recognized an exception to this general rule for a codefendant's statement that facially incriminates the defendant. *Bruton v. United States*, 391 U.S. 123, 135-36 (1968). The *Bruton* Court held that a jury instruction limiting the jury's use of the statement to the declarant-codefendant did not preclude the risk that a jury, despite the limiting instruction, would consider the codefendant's statement, which also implicated the defendant, as evidence of the defendant's guilt. *Id.*

Two Supreme Court decisions define the contours of *Bruton*. In *Richardson*, the Court determined that the government did not violate the Sixth Amendment by introducing a redacted confession by a codefendant that removed all references to the defendant. 481 U.S. at 203. The redacted confession did not indicate that any person other than the declarant-codefendant was involved in the crime; it became incriminating "only when linked with evidence introduced later at trial." *Id.* at 208. In *Gray v. Maryland*, 523 U.S. 185 (1998), the Court held that a defendant's Sixth Amendment rights were violated by the introduction of a declarant-codefendant's confession in which the defendant's name had been removed and replaced with a blank space. When the government read the declarant-codefendant's confession at trial, the government witness stated the word "deleted" whenever a blank space appeared in place of the defendant Gray's name. *Id.* at 188. Although the *Gray* Court reaffirmed *Richardson*'s holding that *Bruton* does not preclude statements that incriminate only inferentially, the Court determined that redactions which replace a defendant's name with an obvious blank or the word "deleted" call jurors' attention specifically to the removed name. *Gray*, 523 U.S. at 193.

Since *Gray*, the Sixth Circuit has not announced precisely what type of redactions are acceptable under *Bruton*. Several other circuits have held that the government may avoid a *Bruton* violation by replacing a defendant's name with a neutral term. For example, the Fourth, Eighth, and Tenth Circuits permit prosecutors to read a codefendant's confession after replacing a defendant's name with "another person" or "another individual." *See United States v. Logan*, 210 F.3d 820, 821-23 (8th Cir. 2000); *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999); *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999).

We think the rule followed by the Fourth, Eighth, and Tenth Circuits that permits the introduction of a declarant-codefendant's self-incriminating, extra-judicial statement, in a joint trial, where the defendant's name is redacted and a neutral term is substituted, avoids any Sixth Amendment or *Bruton* violation. In this case, before reading any of the declarant-codefendants' deposition statements at trial, the government replaced each reference to Vasilakos and Lent with a neutral word, such as "the person" or "another person." An example from the record is illustrative:

Q.      Do you have any idea why *the person* didn't cash their [sic] own checks?

. . . .

Q.      Who made deposits into that account?

A.      *Another person* has.

Q.      *Another person* has?

A.      Yeah.

(Emphasis added.)

Because the government was prosecuting multiple defendants for participation in an alleged conspiracy to defraud CICA, the declarant-codefendants' deposition statements did not ineluctably implicate Vasilakos or Lent. The effect of the redaction methodology used in this case is distinguishable from the circumstances in *Gray*, in which the Supreme Court noted that the inferences at issue referred "directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." 523 U.S. at 196. Here, the government, who alleged a multifaceted conspiracy in which several individuals engaged in activities, substituted names in the deposition statements with the neutral noun "person" or phrase "another person." Reading the declarant-codefendants' redacted depositions into evidence at the defendants' trial did not offend the Confrontation Clause.

**IV.**

Vasilakos and Lent next argue that the district court erred by refusing to permit the defendants to introduce evidence relating to CICA internal operating policies and the actions of various CICA officials, in order to establish a "good faith" defense. The defendants claim that the district court denied them an opportunity to present their "theory of defense" by: (1) refusing to allow them to present evidence that other CICA managers operated similar schemes; (2) refusing to give the jury an instruction that the defendants acted in "good faith"; (3) refusing, initially, to permit evidence of CICA internal operating policies; and (4) excluding certain statements by CICA employees and the defendants as inadmissible hearsay. The defendants argue that, but for these errors, they could have convinced the jury that they were acting in good faith, pursuant to the written and unwritten CICA policies and procedures.

As we have said, the Supreme Court has instructed us to review trial court violations of the Federal Rules of Evidence for abuse of discretion. *Gen. Elec.*, 522 U.S. at 141-42. In a strained but respectful effort to explain the logic of "abuse of discretion" as a standard of review of *all* evidentiary rulings (*i.e.*, how it is that a trial court can have discretion whether to apply a federal statute—the Federal Rules of Evidence—according to its terms) we have explained that "'[i]n reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions.'" *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006) (citation omitted). While this recent statement of our standard of review of evidentiary rulings makes no mention of "abuse of discretion," that apparent contradiction is reconciled by our even earlier precedentially binding pronouncement that "it is an abuse of discretion to make errors of law." *Id.* (subsequent internal quotation marks and citations omitted).

Federal Rule of Evidence 402 states that "[e]vidence which is not relevant is not admissible."

Vasilakos and Lent argue that the proffered evidence that CICA internal operating policies inferentially condoned their practices is relevant because of its tendency to show that they lacked the requisite *mens rea* to commit fraud. To be guilty of mail or wire fraud, a defendant must act with specific intent to defraud. *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). However, fraud on a corporation is not mitigated simply because "corporate officers with broad agency powers authorized and participated in the scheme." *United States v. Gullett*, 713 F.2d 1203, 1211 (6th Cir.

1983). The *Gullett* court noted that, despite participation by corporate officers, the defendants defrauded "the corporation as an entity" and "its owners, the shareholders." *Id.* Because the *Gullett* defendants knew the corporation would rely upon false invoices to make payments, "the basic elements of fraud—misrepresentation and detrimental reliance—[were] present." *Id.*

Aside from the manifest illogic of the argument that because "others did it too, and besides, the employer policies condoned what we did, so we therefore had no specific intent to defraud," we think it is obvious that the defendants' proffered evidence of similar fraud by other managers was not relevant (not "material," actually) because the evidence had no tendency to show that it was less probable that the defendants acted with intent to defraud, than if the evidence had been admitted. *See* Fed. R. Evid. 401. Simply stated, evidence of fraudulent acts by other employees including policy making executives, would have no tendency to show that the defendants' acts were innocent. We think the trial court correctly applied Fed. R. Evid. 402.

The defendants' proffered evidence that they acted in accordance with company policies was at first rejected by the trial court, but on later consideration, it was admitted. The defendants now argue that the initial order rejecting the evidence precluded effective cross-examination of several government witnesses. We disagree. The defendants could have recalled these witnesses and examined them about the company's internal operating policies during presentation of their case in chief. They made no request to do so and, therefore, we are not persuaded that they suffered any prejudice from the delay in presenting company policy evidence.

The defendants also claim that the district court erred by restricting their questioning of several government witnesses. Vasilakos and Lent argue that the statements they sought to elicit about CICA administrative policies should have been classified as "not hearsay" under Fed. R. Evid. 801(d). Alternatively, the defendants contend that, even if the statements were properly excluded under traditional hearsay rules, application of the rules in this case violated their Sixth Amendment right to present a defense.

Inadmissible hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The statements identified by the defendants as improperly excluded are assertions by CICA officials about the goals and policies of CICA. The defendants claim that the assertions should be classified as party admissions and, therefore, admissible. Federal Rule of Evidence 801(d)(2)(A) establishes that a statement is not hearsay if the statement "is offered against a party and is . . . the party's own statement." But CICA is not a party to the United States' criminal prosecution of Vasilakos and Lent. Thus, statements of CICA operating policies and statements by non-testifying CICA officials cannot be admitted as party admissions. The defendants do not argue that the statements were admissible on any other theory.

In rare instances, application of the Federal Rules of Evidence to exclude testimony may violate a defendant's Sixth Amendment right to present a defense. *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). However, the offending rule must "implicate a sufficiently weighty interest of the defendant," *Scheffer*, 523 U.S. at 309, and serve "no legitimate purpose," *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

We conclude that the district court did not violate the defendants' Sixth Amendment rights by applying well settled and deeply rooted hearsay rules to prohibit questioning about several witnesses' extra-judicial assertions of CICA company policy. The hearsay rules the district court correctly applied advance numerous important interests at trial and they are not disproportionate to these interests.

**V.**

Next, the defendants contend that the district court erred in refusing to modify bail restrictions that limited their contact with potential witnesses. Vasilakos and Lent claim that the district court deprived them of the right to prepare a defense by refusing to lift a "no-contact" provision that barred the defendants from interviewing potential government witnesses. Although the district court permitted Vasilakos and Lent to contact witnesses through their attorney, the defendants argue that these interviews were insufficient because they could not convey their specialized knowledge of CICA operations to the attorney conducting the witness interviews.

We review mixed questions of law and fact and the district court's legal conclusions *de novo*. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). The Sixth Circuit has yet to articulate a standard of review specific to bail restrictions. Whether we adopt a *de novo* or abuse of discretion approach, or a combination of the two, the defendants fail to demonstrate entitlement to relief.

The Bail Reform Act permits a court to release a defendant on the condition that he "avoid all contact with an alleged victim of the crime [or] with a potential witness who may testify concerning the offense" if that condition is "the least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(v). The Act directs a judicial officer to consider four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g)(1)-(4).

A federal court's authority to protect the integrity of its proceedings encompasses the authority to take reasonable actions to avoid intimidation or coercion of witnesses. *United States v. Wind*, 527 F.2d 672, 674-75 (6th Cir. 1975). This circuit has consistently upheld pretrial detention in response to threats to intimidate witnesses. *See, e.g.*, *United States v. Graewe*, 689 F.2d 54, 56 (6th Cir. 1982).

We conclude that the district court neither erred nor abused its discretion by imposing a no-contact-with-government-witnesses provision in releasing the defendants on bail. The Bail Reform Act empowers trial courts to restrict a defendant's contact with potential witnesses if the condition is the "least restrictive" avenue for avoiding witness tampering. The no-contact provision is far less restrictive than pretrial detention. In all events, the defendants have not shown any harm stemming from their inability to contact government witnesses personally. The district court did not restrict defense counsel's ability to interview any potential witnesses, and the defendants failed to provide any evidence that their attorney's preparation was inhibited by a lack of specialized knowledge of the operations of CICA.

**VI.**

The defendants next claim the district court erred in admitting in evidence several post office box records, because, they argue, the witness, Donald Simmons, a United States postal inspector, was not a "custodian or other qualified witness" such that he could not lay the proper foundation to admit the records under the business records exception to the hearsay rules. Fed. R. Evid. 803(6). This same issue was raised by the defendants' codefendant Steven Baker in his separate appeal.

In *United States v. Baker*, 458 F.3d 513 (6th Cir. 2006), another panel of this court held that Simmons met the requirements of an "other qualified witness." *Id.* at 518-19. We see no reason—indeed have no authority—to revisit the issue.

The defendants also claim that their confrontation rights were violated under *Crawford*, 541 U.S. 36, when the court admitted in evidence Simmons's testimony and the post office box records.

Since the defendants failed to raise this objection during trial, we review for plain error.  *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989).

*Crawford* applies only to testimonial statements.  *Crawford*, 541 U.S. at 56.  In fact, the Supreme Court specifically characterizes business records as non-testimonial.  *Id.*  Therefore, the post office box records fall outside the purview of *Crawford*.  The defendants cannot claim a Confrontation Clause violation as to Simmons's testimony because Simmons testified in court, subject to cross-examination.  Therefore, the district court did not commit plain error by allowing Simmons's testimony and admitting the post office box records.

## VII.

Vasilakos and Lent next claim that the district court erred by failing to instruct the jurors on the limited purpose for which the "summary" testimony of IRS agent Diana Dirr was received.  The defendants did not request such an instruction at trial.  Before submitting the case to the jury, the district court correctly instructed the jurors concerning Dirr's testimony as an expert witness, but not her testimony as a summary witness.

When a defendant fails to request a limiting instruction at trial, this court reviews the district court's instruction for plain error.  *United States v. Martinez*, 430 F.3d 317, 337 (6th Cir. 2005), *cert. denied*, 547 U.S. 1034 (2006).  A finding of plain error requires the existence of (1) error, (2) that is plain, and (3) that affects substantial rights.  *Baker*, 458 F.3d at 517.

Summary testimony is appropriate to aid the jury in the examination of testimony and documents in evidence.  *United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979).  However, the summary should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence.  *United States v. Campbell*, 845 F.2d 1374, 1381 (6th Cir. 1988).

The district court's instruction made no reference at all to Dirr's summarizing testimony.  Worse, the court's instruction on expert opinion testimony may well have been understood by the jurors as referring, as well, to the witness summary testimony, thus conferring greater evidentiary credibility weight upon the summary than it would carry absent any instruction at all.  So, we conclude that omitting the summary testimony instruction was plain error.  However, the defendants have not established that the error affected their "substantial rights."  For an error to have affected a defendant's substantial rights, "[i]t must have affected the outcome of the district court proceedings."  *United States v. Olano*, 507 U.S. 725, 734 (1993).  Given the overwhelming evidence of the defendants' guilt, we are satisfied that the court's failure to instruct on summary testimony did not affect the outcome of the trial.

## VIII.

Finally, Vasilakos and Lent argue that their sentences are unreasonable.  Vasilakos was given 66 months of confinement and Lent was given 57 months.

Our role in sentence review is limited to determining whether the sentence imposed is unreasonable.  *United States v. Booker*, 543 U.S. 220, 261 (2005).  Variance from the guidelines range is one factor we consider when assessing a sentence's reasonableness.  *United States v. Keller*, 498 F.3d 316, 323 (6th Cir. 2007).  In deciding whether to sentence outside the guidelines range, the court must first correctly identify the applicable guidelines range, determine whether a sentence within that range is appropriate, and if it is not, impose a sentence that takes into account all the relevant factors enumerated by 18 U.S.C. § 3553.  *United States v. Stone*, 432 F.3d 651, 655 (6th Cir. 2005), *cert. denied*, 127 S. Ct. 129 (2006).

Although courts must consider the recommended guidelines range, reasonableness review "'is not limited to consideration of the length of the sentence.'" *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (citation omitted), *cert. denied*, 546 U.S. 1126 (2006). Sentences must be both procedurally and substantively reasonable. *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). Appellate courts assessing procedural reasonableness consider the "factors evaluated" and "procedures employed" by the district court in its sentencing determination. *Webb*, 403 F.3d at 383. A sentence is procedurally "unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* (citation and footnote omitted).

A sentence is substantively unreasonable if "'the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor.'" *Collington*, 461 F.3d at 808 (internal alterations omitted) (quoting *Webb*, 403 F.3d at 385).

After considering Vasilakos's presentence report (PSR), the magistrate judge conceded that he could not ascertain the amount of money laundered through the various accounts controlled by Vasilakos and Lent. The PSR assumed a laundered amount of $0 and established a base offense level of 20. The PSR then recommended an upward adjustment of eight levels based on Vasilakos's status as a leader, his abuse of a position of trust, and obstruction of justice. The resulting base offense level of 28, with a criminal history category I, carried a recommended sentence of 78 to 97 months.

The district court recognized the advisory nature of the sentencing guidelines and acknowledged that, without the enhancements recommended by the PSR, Vasilakos's base offense level would be 20, with a recommended sentence of 33 to 41 months. After expressing concern that adopting the enhancements might be unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the district court found the sentencing range to be 33 to 41 months. Next, the court explicitly considered the factors enumerated by 18 U.S.C. § 3553(a) and determined that a sentence within the 33 to 41 month range would not adequately protect the public, provide deterrence, and foster respect for the law. The court then sentenced Vasilakos to 66 months' imprisonment. The 66-month prison term falls squarely within the 0-20 year sentence range enumerated in the money laundering and fraud statutes.

Similarly, the district court expressly considered the § 3553 factors before imposing a 57-month sentence on Lent. The court noted that Lent likely perjured herself during her testimony and obstructed justice by tampering with a witness during trial. Like Vasilakos's sentence, Lent's 57-month prison term is within the statutory range, in her case, 0-5 years.

We conclude that the sentences imposed on Vasilakos and Lent are reasonable.

The defendants' remaining assignments of error are without merit.

## IX.

The district court's judgments are **AFFIRMED**.