NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0765n.06
Filed: December 17, 2008

Nos. 06-5427/5432/5433/5480/5483

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

HECTOR SAUL MENDEZ (06-5427);
JOSE ALVARADO BORREGO (06-5432);
JOSE BENCOMO-CASTILLO (06-5433);
JOSE BEJARANO HERNANDEZ (06-5480);
JUAN VICTOR PEREZ (06-5483);

     Defendants-Appellants.

                                      /

On appeal from the United States
District Court for the Middle District
of Tennessee

BEFORE:    GUY, RYAN and McKEAGUE, Circuit Judges.

     RYAN, Circuit Judge.     In this consolidated appeal, the defendants, Hector Saul Mendez, Jose Alvarado Borrego, Jose Bencomo-Castillo, Jose Bejarano Hernandez, and Juan Victor Perez, challenge their convictions for conspiring to kidnap three persons, in violation of 18 U.S.C. § 1201(c); kidnaping three persons, including a minor, in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(g); and brandishing or being principals to the brandishing of firearms during the kidnaping, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii). We will affirm.

**I.**

     In 2004, Hernandez and Juan Chavez, a local drug dealer, engaged in a series of drug transactions, whereby Hernandez would arrange a delivery of marijuana and cocaine

to Chavez through Hernandez's Mexican contacts. After two major deliveries, Chavez defaulted on payment and owed the Mexican dealers over one million dollars. Under pressure from the Mexican suppliers to collect from Chavez, Hernandez conceived a scheme to kidnap Chavez's mother, Rosa Chavez, hold her captive, and then demand that Juan Chavez pay a ransom for her release. Hernandez recruited the other defendants to help him execute the plan.

On August 7, 2004, the five defendants traveled from Dalton, Georgia, to Rosa Chavez's home in Nashville, Tennessee. Around midnight, Borrego forced open Mrs. Chavez's front door and went inside, followed by Bencomo-Castillo, Mendez, and Perez openly displaying firearms. The defendants abducted the three occupants of the home, Rosa Chavez, Eloy Florez (Rosa's boyfriend), and Estephany Marquez (Juan Chavez's fourteen year old niece), at gunpoint, eventually driving them to a Super 8 Motel in Dalton, Georgia, and holding them as hostages.

On August 9, 2004, the police arrested all five kidnapers before any ransom was paid.

Following a joint trial at which Hernandez was the only defendant to testify, the jury found each defendant guilty on all counts. The district court sentenced each defendant to serve between 324 - 408 months' imprisonment.

**II.**

The defendants argue an array of evidentiary issues. We review a trial court's evidentiary rulings for an abuse of discretion. Sommer v. Davis, 317 F.3d 686, 693 (6th Cir. 2003).

**A.**

First, all the defendants argue that the district court improperly restricted their "right" to cross-examine Rosa Chavez, a government witness, regarding her earlier involvement in her son Juan's drug trafficking. Specifically, the defendants wished to impeach Rosa's credibility by introducing into evidence two allegedly conflicting "302 forms," or summaries of Rosa's FBI interviews generated by Agent Brett Curtis, containing statements regarding her receiving some of her son's drug proceeds. In one of the statements, a May 2005 interview, Curtis questioned Rosa about events occurring <u>before</u> the kidnaping, and as to those events, she denied profiting from Juan's drug sales. Then, in October 2005, Curtis questioned Rosa about events occurring <u>after</u> the kidnaping, and as to those events, she admitted "laundering" Juan's drug money.

The Confrontation Clause of the Sixth Amendment of the Constitution assures defendants the right to confront the witnesses against them, but the right is not absolute. <u>See</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-80 (1986). The trial judge retains "wide latitude" in imposing limits to cross-examination. <u>Id.</u> at 679.

After allowing defense counsel to question Curtis and Rosa outside the presence of the jury, the district court correctly determined that Rosa's statements to Curtis in the 302 forms were <u>not</u> inconsistent, one with the other, because Rosa's statements as recorded in the 302 forms concerned her activity at two different times. Moreover, the district court properly excluded the 302 forms because they consisted of extrinsic evidence of matters collateral to the defendants' kidnaping cases, which rendered them inadmissible under Fed. R. Evid. 608(b). The court allowed unrestricted cross-examination of Rosa concerning her knowledge of the kidnaping events and the defendants were allowed to attempt to impeach Rosa's credibility by inquiring whether she knew that Juan's money

was being derived from drug trafficking; she responded, "Yes." She admitted that she benefitted from her son's drug money, which, according to the defendants, was the "crux of the argument." For these reasons, we conclude the district court did not abuse its discretion in limiting Rosa's cross-examination.

**B.**

The crux of Mendez's defense was that he was compelled, under duress, to participate in the kidnaping. He now claims that the district court abused its discretion by restricting, on hearsay grounds, the government's direct examination of Agent Frank O'Neill concerning Mendez's post-arrest statements. Mendez argues that Mendez's statements, had the court not excluded them, would have established his then existing state of mind, which in turn tended to prove his duress defense, and should have been admitted under Fed. R. Evid. 803.

Inadmissible hearsay includes out-of-court statements used in court to prove the truth of the matter asserted and generally, such statements are inadmissible. Fed. R. Evid. 801, 802. But, under Fed. R. Evid. 803(3), there is an exception for statements that tend to show, circumstantially, the declarant's "[t]hen existing mental, emotional, or physical condition." In order to be admissible under Rule 803(3), the statement must have been contemporaneous with the declarant's experience of the mental, emotional, or physical condition referred to when the declarant did not have "an opportunity to reflect and possibly fabricate or misrepresent his thoughts." United States v. LeMaster, 54 F.3d 1224, 1231 (6th Cir. 1995).

The district court correctly determined that Mendez's statements did not qualify under the Fed. R. Evid. 803(3) exception. Mendez claims that the statements he made to

O'Neill two days <u>after</u> the kidnaping suggesting that he acted under duress, reflected his

state of mind <u>at</u> <u>the</u> <u>time</u> of the kidnaping.  Because Mendez's statements were not made

contemporaneous with the kidnaping, but two days later, and under police interrogation,

the district court properly excluded the statements as inadmissible hearsay.[*]

### C.

Finally, Hernandez argues that the district court abused its discretion when it

excluded his proffered evidence that his father had been kidnaped in Mexico, which, he

argues, would have supported his duress defense.

Hernandez sought to introduce various types of evidence (Hernandez's testimony

and Hernandez's father's and sister's video-taped depositions) to show that his father had

been kidnaped and held for ransom in Mexico and that, as a result, Hernandez was

"forced" to kidnap Rosa, Eloy, and Estephany in order to get money to pay the ransom

demanded by his father's kidnappers.

We conclude the district court properly excluded the proffered evidence because

it was not shown that at the time Hernandez kidnaped <u>his</u> victims, he was aware that his

father had been kidnaped.  The result is that the proffered testimony by Hernandez's father

and sister regarding the father's kidnaping was irrelevant and inadmissable.  <u>See</u> Fed. R.

Evid. 402 and 602.

---

[*]There is an old argument some evidence law theorists find enthralling, to the effect that at common law, in the right circumstances, an out-of-court statement tending to show the declarant's then state of mind may be admissible, but not as an "exception" to the hearsay rule, because such statements are not offered "for the truth of the matter asserted," but only to prove that the statement was made, thus illuminating the declarant's thinking or "state of mind."  But Fed. R. Evid. 803(3), like the proverbial 800 pound gorilla, precludes such interesting reasoning, by simply pronouncing then existing state-of-mind statements to be an exception to the prohibition against hearsay.

**III.**

Borrego, Bencomo-Castillo, Hernandez, and Perez also argue that the district court abused its discretion when it refused to declare a mistrial following an alleged Bruton violation. Bruton v. United States, 391 U.S. 123 (1968).

We review a district court's decision not to grant a mistrial for an abuse of discretion. Zuern v. Tate, 336 F.3d 478, 485 (6th Cir. 2003).

Bruton holds that in a joint trial, an out-of-court statement by one defendant incriminating a codefendant is inadmissable as to the codefendant under the Confrontation Clause of the Sixth Amendment. Bruton, 391 U.S. at 135-36. We have held that "the introduction of a . . . []defendant's self-incriminating, extra-judicial statement, in a joint trial, where the [co]defendant's name is redacted and a neutral term is substituted," does not offend Bruton or the Sixth Amendment. United States v. Vasilakos, 508 F.3d 401, 408 (6th Cir. 2007). Likewise, there is no violation where a district court provides a proper limiting instruction to the jury after the confession is redacted to eliminate not only the codefendant's name, but any reference to his existence. See Richardson v. Marsh, 481 U.S. 200, 208-09 (1987).

The defendants claim a Bruton violation occurred during trial when O'Neill recounted Mendez's statements during his post-arrest interview, which included several references to "four other people" and "the five people" involved in the kidnaping.

O'Neill's references did not facially incriminate the other codefendants. O'Neill mentioned no specific names during his testimony, and the district court immediately provided a limiting instruction to the jury regarding O'Neill's references to the "others."

**IV.**

The defendants' remaining assignments of error are manifestly without merit.

**V.**

The district court's judgment is **AFFIRMED**.