NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0648n.06

No. 07-2487

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Oct 14, 2010

LEONARD GREEN, Clerk

PATRICK ALLEN LANG,              )
                                 )
         Petitioner-Appellant,   )
                                 )    ON APPEAL FROM THE UNITED
v.                               )    STATES DISTRICT COURT FOR THE
                                 )    WESTERN DISTRICT OF MICHIGAN
DAVID GUNDY, Warden,             )
                                 )
         Respondent-Appellee.    )
                                 )

Before:  BOGGS and COOK, Circuit Judges; and COLLIER, Chief District Judge.[*]

**COLLIER, Chief District Judge.**  Petitioner appeals the district court's decision denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  In his petition, Petitioner alleges several constitutional violations stemming from his trial and conviction in Michigan state court.  Specifically, Petitioner claims that the state court erroneously: denied his request for a change of venue; refused to grant a mistrial following prosecutorial misconduct; tried him jointly with two codefendants; and admitted into evidence his nontestifying codefendants' out-of-court confessions.  In addition, Petitioner argues that he received ineffective assistance of counsel when his attorney failed to request a separate trial and failed to object to the introduction of the codefendants' confessions.  For the reasons below, we **AFFIRM**.

---

[*] The Honorable Curtis C. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

**I.**

During the early morning of November 14, 1999, four men invaded the home of a young woman and her father. They robbed the father of his wallet and bound him to a chair, and then brutally raped and kidnapped the young woman. They first took her to an ATM and forced her to withdraw money, and then transported her in the back of a van from Mulliken, Michigan, where she lived, to a hotel room in Detroit. During this trip, she was sexually attacked again in the back of the van. Upon arriving in the hotel room, she was again sexually attacked. Eventually, she was released by her captors.

Petitioner was tried and convicted of these crimes in Michigan state court in a joint trial with two codefendants. Because of the heinous nature of the alleged acts, both the trial and the events leading up to it were the focus of community-wide attention and substantial press coverage. The trial court conducted a survey of the entire array of prospective jurors and discovered that nearly every individual was somehow acquainted with at least the facts of the case—many even recognized the defendants from their pictures in the local newspaper. In the face of this publicity, Petitioner moved for a change of venue, which the trial court denied.

The voir dire process lasted three days, with the trial court interviewing sixty-four prospective jurors in chambers to determine the extent of their knowledge of the case. Due to the nature of the allegations, some of the prospective jurors claimed an inability to remain impartial and presume Petitioner innocent. Two such jurors, who initially claimed to lack impartiality, were empaneled on the jury after additional questioning revealed their ability to remain impartial. Also during voir dire, the prosecutor digressed from questioning and made a lengthy statement to the jury

concerning the law of aiding and abetting, to which one of the defendants objected. After a sidebar conference, the judge sustained the objection and directed the prosecutor to continue with questioning.

During trial, the state introduced into evidence the audio recordings of out-of-court statements made by Petitioner's codefendants. These statements were admitted without objection by Petitioner's trial counsel, even though the codefendants did not testify.

Petitioner was convicted of first-degree home invasion, firearm possession by a felon, two counts of armed robbery, two counts of kidnapping, fourteen counts of first-degree criminal sexual conduct, and three counts of conspiracy. Defendant appealed his conviction to the Michigan Court of Appeals, claiming the same errors he alleges here, and the state court denied relief, finding no violation of Petitioner's constitutional rights. In addition, the Michigan court held that Petitioner procedurally defaulted the joinder claim by failing to supplement his appeal with copies of the transcript of the pretrial conference where the issue was discussed, despite multiple requests from the court that he do so.

After the state court denied him relief and he exhausted all other state remedies, Petitioner sought federal habeas relief in the United States District Court for the Western District of Michigan. There, a magistrate judge issued a report and recommendation, denying relief on each claim, finding the Michigan Court of Appeals did not unreasonably apply federal law on any of the claims. The magistrate judge also agreed that Petitioner procedurally defaulted his claim of unconstitutional joinder. Following Petitioner's objection, the district court adopted the report and recommendation, denying the petition. Petitioner appealed.

**II.**

Petitioner seeks a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. We review a district court's legal conclusions denying a writ de novo and its findings of fact for clear error. *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006).

Under the AEDPA, a federal court may not grant a state prisoner's habeas petition unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. *Slaughter*, 450 F.3d at 232. A decision is an "unreasonable application" of federal law if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case. *Id.*

**III.**

**A. Change of Venue**

Petitioner argues the state trial court erred in denying his motion for a change of venue because pretrial publicity jeopardized his right to a fair trial by an impartial jury. The Michigan Court of Appeals held that denying a change of venue did not violate Petitioner's constitutional

rights, and the district court held that this did not constitute an unreasonable application of federal law. We agree.

Criminal defendants tried in state court have a Fourteenth Amendment right to a fair trial by a panel of impartial, unbiased jurors. *Irvin v. Dowd*, 366 U.S. 717, 722–24 (1961). A jury is presumed impartial, and the burden rests with the challenger to show otherwise. *Id.* at 723. A court must grant a change of venue only when pretrial publicity prejudices a defendant's right to a fair trial by an impartial jury. *Id.* Prejudice caused by pretrial publicity sufficient to require a change in venue can be either presumptive or actual. *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).

### 1. Presumed Prejudice

"Prejudice from pretrial publicity is rarely presumed." *Id.* Extensive media coverage and knowledge within the community of the crimes and of the defendant are insufficient by themselves to create a presumption of prejudice. *Dobbert v. Florida*, 432 U.S. 282, 303 (1977); *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002). Rather, the Supreme Court has held that presumed prejudice exists only where a conviction was "obtained in a trial atmosphere that had been utterly corrupted by press coverage." *Murphy v. Florida*, 421 U.S. 794, 798 (1975). The Sixth Circuit has held this occurs only when an "inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley*, 488 F.3d at 387.

The pretrial publicity in this case was extensive. When the initial panel of prospective jurors was seated, twelve of the fourteen indicated familiarity with the case from television, radio, newspapers, and other sources. Ultimately, the trial court conducted a survey of the entire array and found that a vast majority of the prospective jurors held some prior knowledge of the case. Some

prospective jurors even recognized the defendants from their photographs in the newspaper. Press attention on the trial itself was also extensive. During voir dire, one of the lawyers asked the trial judge for a cautionary instruction directed to the spectators in the courtroom, because there was a "small eruption back in the gallery" whenever a prospective juror was excused.

There is, however, no evidence that Petitioner's trial was "utterly corrupted" by press coverage. *See Murphy*, 421 U.S. at 798. Much as in *Dobbert*, Petitioner's argument that the pretrial publicity denied him a fair trial "rests almost entirely upon the quantum of publicity which the events received." 432 U.S. at 303. There is no indication the pretrial publicity rose to the level of an "inflammatory, circus-like atmosphere." *See Foley*, 488 F.3d at 387. Petitioner's only reference to the effect of the publicity on the trial itself is to the "small eruptions" that occurred whenever a prospective juror was excused. This isolated example does not evidence an "inflammatory, circus-like" proceeding. Therefore, Petitioner fails to establish a presumption of prejudice.

## 2. Actual Prejudice

When pretrial publicity does not rise to a level of presumed prejudice, a defendant is entitled to a change of venue only if the pretrial publicity is shown to have caused actual prejudice. *Id*. To discern actual prejudice, trial courts should conduct a "searching voir dire" of prospective jurors, reviewing both the media coverage and jurors' statements to assess "whether a community-wide sentiment exists against the defendant." *Id.* Negative media coverage by itself is insufficient to create actual prejudice, and even the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, does not rebut the presumption of impartiality. *Id.* "It

is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723; *Foley*, 488 F.3d at 387.

In determining whether a "community-wide sentiment exists against the defendant," one relevant factor is the length to which the trial court must go in order to select jurors who appear to be impartial. *Murphy*, 421 U.S. at 802–03. According to the Supreme Court, "[i]n a community where most veniremen will admit to disqualifying prejudice, the reliability of the others' protestations may be drawn into question." *Id.* at 803. The Supreme Court has not identified a bright line at which a juror's impartiality may be impeached by the level of other jurors' pretrial exposure. For example, in *Irvin*, 90% of those examined during voir dire had a predisposed opinion that the defendant was guilty, forcing the trial court to excuse for cause 268 of the 430 veniremen. *Id.* (interpreting *Irvin*). The Court found this sufficient to cast doubt on the reliability of the remaining jurors' claims of impartiality. In *Murphy*, by contrast, the trial court excused only 20 of the 78 persons questioned, which the Supreme Court found insufficient to "impeach the indifference of jurors who displayed no animus of their own." *Id.*

In this case, all of the jurors professed an ability to set aside any preexisting opinion and remain impartial. Petitioner complains that two of the jurors on the panel initially stated that they were unsure whether they could remain impartial, given the severity of the crimes charged. Review of the record, however, shows that after additional questioning, both of these jurors stated committed to remaining impartial and listening to the evidence before forming an opinion in the case. Thus, both of these jurors were sufficiently rehabilitated. *See Foley*, 488 F.3d at 389–90 (holding jurors

were impartial despite the necessity of "extensive rehabilitation . . . in order to qualify the jurors for service on the jury").

Because the jurors expressed an ability to remain impartial, the burden rests on Petitioner to show that these statements are untrustworthy. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *Irvin*, 366 U.S. at 723. Petitioner fails to meet this burden.

Petitioner's only attack on the jury's impartiality rests with their exposure to pretrial publicity. In this case, the court excused for cause only 28 out of 128 prospective jurors. The district court conducted a thorough review of each of these excused jurors and concluded that only 18 of these 28 were for reasons related to an opinion of guilt, knowledge of the case, or prosecutorial bias. Even without parsing these numbers down as the district court did, however, the percentage of unfit jurors in this case (28 out of 128) is still far less than in either *Murphy* (20 out of 78) or *Foley* (44 out of 98). Therefore, the pretrial publicity in this case does not establish a "community-wide resentment" sufficient to show actual prejudice.

Because Petitioner failed to impeach the credibility of any individual juror, no actual prejudice occurred in jury selection. Accordingly, we affirm the district court's rejection of this claim for relief.

## B. Prosecutorial Misconduct During Voir Dire

Petitioner argues that statements and legal arguments made by the prosecutor during voir dire deprived him of his constitutional right to a fair trial. Because the trial court met these allegedly improper statements with adequate curative instructions, Petitioner was not denied a constitutionally fair trial.

When a habeas petitioner alleges that prosecutorial misconduct violated his due process rights, the analysis focuses on the fairness of the trial, not the culpability of the prosecutor. *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002) (citing *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "Habeas relief is warranted when the prosecutor's conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Id.* (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). To determine whether a trial was fundamentally unfair, the court considers four factors: 1) whether the remark tended to mislead the jury or prejudice the accused, 2) whether the remark was isolated or extensive, 3) whether the remark was accidental or intentional, and 4) the strength of the evidence against the accused. *Id.*

In analyzing the first factor, the Sixth Circuit recognizes "the effectiveness of curative instructions in mitigating prejudice." *Id.* at 751. There exists an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). In *Serra*, for example, we held that a prosecutor's improper references to an irrelevant prior conviction did not deny the petitioner a constitutionally fair trial. 4 F.3d at 1355–56. Though we acknowledged the prejudicial nature of the prosecutor's comments, we noted that, "the trial judge gave a strong, prompt, curative instruction," which factored heavily "into our determination that the isolated statement made by the prosecutor did not cause petitioner's trial to be fundamentally unfair." *Id.* at 1356.

In this case, the prosecutor's statements during voir dire about the law of aiding and abetting did not prejudice Petitioner's ability to receive a fair trial because the trial court promptly responded to any resulting confusion with adequate curative instructions. The trial judge sustained the

defense's objection to the prosecutor's statements and directed the prosecutor to move on with questioning. In addition, the trial court later instructed the jury on the proper interpretation of the law and to be mindful that the lawyers' statements did not constitute evidence. As the Michigan Court of Appeals noted, the amount of potential harm in the prosecutor's statements was minimal because it related to evidence actually presented at trial. And although the jury sent a question to the trial judge about the law of aiding and abetting during its deliberations, which Petitioner cites as evidence of actual jury confusion, this too the trial court met with a curative instruction.

Taken as a whole, the Petitioner's allegations of prosecutorial misconduct fall far short of establishing a constitutional violation. To the extent the prosecution offered any improper commentary during voir dire, the trial judge's curative instructions sufficiently counteracted any confusion the jury may have had on the law of aiding and abetting, and mitigated any prejudice to Petitioner caused by the prosecutor's statement. Accordingly, the district court correctly rejected this claim for relief.

## C. Joinder of Codefendants

Petitioner argues that he was denied due process when the trial court failed to sever his trial from that of his codefendants. Both the Michigan Court of Appeals and the district court concluded Petitioner procedurally defaulted this claim. But even assuming grounds for excusing the procedural default, Petitioner's claim fails on the merits because Petitioner was not constitutionally required to receive a separate trial in this case.

Strong public policy favors joint trials when charges will be proved by the same evidence and result from the same acts, because society has an interest in speedy and efficient trials. *United States*

*v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006). "Morever, the risk of prejudice to defendants in a joint trial is presumably low, because 'juries are presumed capable of sorting evidence and considering separately each count and each defendant.'" *Id.* (quoting *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996)). "These considerations are overcome 'only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable determination about guilt or innocence.'" *Id.* (quoting *Murr v. United States*, 200 F.3d 895, 904 (6th Cir. 2000)). A defendant seeking severance must show substantial, undue, or compelling prejudice to a specific trial right. *Id.*

Petitioner argues that the defense strategies of his codefendants caused him substantial prejudice because his codefendants' placed all of the blame on him, asserting mutually antagonistic defenses. We previously held, however, that "a mutually antagonistic defense is not prejudic[ial] *per se*" and does not mandate severance as a matter of law. *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995). Rather, the appropriate standard asks whether a joint trial poses a serious risk to a specific trial right of the defendant. *See Zafiro*, 506 U.S. at 539; *Breinig*, 70 F.3d at 853. In order to show an unconstitutional joinder, Petitioner must identify a specific trial right implicated by the joinder; general antagonism between defendants does not suffice. *See Breinig*, 70 F.3d at 853. Because Petitioner fails to identify any specific right infringed by the joint trial, the district court correctly rejected this claim for relief.

## D. Confrontation Clause: Statements of Nontestifying Codefendants

Petitioner argues that his rights under the Confrontation Clause were violated when the trial court admitted out-of-court confessions uttered by his nontestifying codefendants. Because the

parties have not presented a record of the statements actually presented to the jury, we cannot determine whether a constitutional violation actually occurred. Despite this omission however, we conclude that any potential error was harmless in light of the other evidence of Petitioner's guilt, and therefore affirm the district court's decision denying relief on this claim.

A defendant has a Confrontation Clause right to cross-examine a codefendant who incriminates him. *See Bruton v. United States*, 391 U.S. 123, 126, 135–36 (1968). Therefore, a codefendant's extrajudicial confession, though it may be admissible against the codefendant, is inadmissible in a joint trial if that confession incriminates the defendant and the codefendant does not testify. *Id.*; *see also United States v. Vasilakos*, 508 F.3d 401, 407 (6th Cir. 2007). This is true even if the trial judge gives clear and concise instructions that the evidence may be considered only as to the confessing codefendant, because of the substantial risk that the jury, despite the instructions, will look to the incriminating extrajudicial statements in assessing the defendant's guilt. *Id.*

This rule only applies, however, if the confession facially incriminates the defendant. *Richardson*, 481 U.S. at 202; *see also Vasilakos*, 508 F.3d at 407. If the court redacts all references to the defendant, so that the confession does not expressly implicate the defendant as an accomplice to the crime, the confession is admissible against the codefendant, and remains so even if defendant is linked to the confession by independent evidence. *Richardson*, 481 U.S. at 208.

In this case, the parties neglected to include the transcripts of the allegedly unconstitutional statements in the record, and, based on the assertions of counsel at oral argument, it appears that transcripts of these statements do not exist. Consequently, we cannot resolve Petitioner's claim on the merits.

And although Petitioner attempts to supplement the record on appeal with transcripts of his codefendants' original statements to police, these statements prove unhelpful for two reasons. First, with specific exceptions not applicable here, evidence cannot be added to the record for the first time on appeal. *See Adams v. Holland*, 330 F.3d 398, 406 (6th Cir. 2003). Second, even if the statements identified by Petitioner had been presented to the district court, they still would have no bearing on the issue at hand because they are not the statements presented to the jury; rather, they are the original statements his codefendants made to investigators. Here, the pivotal question is whether the out-of-court statements were properly redacted before being submitted to the jury. *See Vasilakos*, 508 F.3d at 407. The transcripts Petitioner asks us to consider do not shed any light on the redaction issue because they show only the statements that existed prior to any redaction.

Deficiencies in the record notwithstanding, to the extent any *Bruton* violation occurred, we concluded that it amounted to harmless error, and therefore affirm the district court's denial of relief on this claim. *See Schneble v. Florida*, 405 U.S. 427, 430 (1972) (subjecting alleged *Bruton* violations to harmless error review); *United States v. Macias*, 387 F.3d 509, 520 (6th Cir. 2004) (same). A petitioner is entitled to federal habeas relief in the face of a constitutional error only if the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). To determine whether a Confrontation Clause violation is harmless, we consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case."

*Fulcher v. Motley*, 444 F.3d 791, 809 (6th Cir. 2006) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Even assuming the statements presented to the jury contained unconstitutional references to Petitioner, the relevant factors reveal the harmless nature of any violation. The strongest evidence against Petitioner was not his codefendants' out-of-court confessions, but the victim's extensive description of her attack and her in-court identification of Petitioner as one of her attackers (J.A., Attachment 6, at 4-5). Moreover, the constitutional portions of the allegedly unconstitutional statements—the portions of the codefendants' statements that did not facially incriminate Petitioner—are properly included in our review of the strength of the prosecution's case. *See Richardson*, 481 U.S. at 208. For example, Petitioner's codefendants' confessions regarding their own conduct and their admissions that they acted in concert with an additional conspirator were constitutionally admissible against Petitioner. These unobjectionable portions of codefendants' statements, considered together with the victim's testimony, render the prosecution's case strong enough to convince us that any *Bruton* error was harmless.

## E.      Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial counsel was constitutionally ineffective, which requires him to demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment [and that] . . . the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner advances two allegations of ineffective assistance by his trial counsel: 1) counsel's decision to stipulate to a joint trial; and 2) counsel's failure to object to the introduction of his

nontestifying codefendants' out-of-court confessions. As explained above, however, neither of these alleged errors resulted in a violation of Petitioner's constitutional rights. Because Petitioner fails to establish any constitutional violation stemming from his trial counsel's performance, his ineffective assistance claim lacks merit.

## IV.

For the reasons stated above, we **AFFIRM** the decision of the district court.