NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0397n.06

Case No. 17-6168

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 07, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ALFRED BRADLEY ADKINS, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: NORRIS, DONALD, and BUSH, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** A jury convicted Defendant-Appellant Dr. Alfred Bradley Adkins ("Adkins") of several crimes for his role in one of the highest-volume Social Security frauds ever uncovered. The district court sentenced him to a total of 300 months' imprisonment. Adkins now appeals both his conviction and sentence, arguing that the court erred in admitting loss amount testimony and co-conspirator statements at trial and subsequently imposed a substantively unreasonable sentence. For the reasons that follow, we **AFFIRM**.

**I.**

In May 2011, the Wall Street Journal reported that Eric C. Conn ("Conn"), a prolific Kentucky lawyer who marketed himself as "Mr. Social Security," had a suspicious and troubling relationship with Social Security Administrative Law Judge David B. Daugherty ("Daugherty"). Soon after, the Social Security Office of the Inspector General ("OIG") began investigating Conn

and Daugherty's practices and uncovered one of the largest social security frauds in American history.

Though carried out on a massive scale, Conn's fraudulent scheme was relatively simple. First, Conn bribed Daugherty to award disability benefits to Conn's clients. From 2004 to 2011, Daugherty made monthly calls to Conn's law office and communicated which of Conn's cases he would decide the following month. Eventually, Daugherty would indicate whether he wanted a mental or physical report on the identified claimants. From this, Conn's staff would create the "DB list,"[1] which identified those claimants to whom Daugherty would be granting benefits and what type of evaluation was needed.

Next, Conn's firm would arrange for the requisite mental or physical evaluations that Daugherty required to legitimize his findings. Starting in 2004, Conn's firm scheduled mental evaluations with Adkins, a Ph.D. clinical psychologist. After performing the evaluation—often in Conn's office—Adkins would provide a narrative report and Residual Functional Capacity form ("RFC") for each client. These RFCs "summarized the actual strengths and weaknesses of the particular clients in terms of were they able to do practical daily activities of living and what they were able to accomplish or not accomplish." RE 276, PageID #2346. Conn would then submit the RFCs to the Social Security Administration ("SSA") in support of claimants' disability. Adkins provided such services for years, often editing and resubmitting the forms at Conn's direction to ensure a certain disability was represented. In 2007, Adkins began signing RFCs that Conn's firm completed without him, based on templates. Multiple employees attested that no thought or evaluation went into the RFCs selected for these pre-filled forms. For each evaluation, Conn paid Adkins $325 to $350.

---

[1] From Daugherty's first name and middle initial ("David B.").

Using this methodology, Conn executed the fraud with prodigious results. The investigation identified over 2,000 cases from 2007 to 2011 in which Daugherty issued decisions favorable to Conn clients. Adkins signed approximately 249 pre-completed Conn templates for Conn's clients. The investigation also revealed approximately $607,000 in structured payments from Conn to Daugherty, and $193,600 from Conn to Adkins.

After identifying Adkins' involvement in the fraud, OIG agents interviewed him on multiple occasions. Before a grand jury, Adkins acknowledged that he was paid when he signed the RFCs but denied rubber stamping the forms. Adkins later testified before the Senate Committee on Homeland Security and Government Affairs that he did not realize the pre-completed RFCs were used by SSA administrators or adjudicators. Adkins admitted to the Committee that he probably found every Conn patient disabled.

In April 2016, a grand jury returned an eighteen-count indictment charging Conn, Daugherty, and Adkins with various social security fraud offenses. Adkins was charged with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349; mail fraud, in violation of 18 U.S.C. §§ 1341 & 2; wire fraud, in violation of 18 U.S.C. § 1343 & 2; and making a false statement or representation, in violation of 42 U.S.C. § 408(a)(3). Before trial, both Conn and Daugherty pleaded guilty to similar, related charges. Adkins, however, proceeded to jury trial in 2017.

At trial, the jury heard testimony from Conn's former employees, other doctors involved in the scheme, Social Security and Disability experts, investigating agents and forensics accountants, and Adkins' former administrative assistant. Adkins' defense presented two witnesses: Adkins' friend, who testified that Adkins had seen patients later than normal business hours, and Adkins' daughter, who testified that her father's patient examinations lasted sixty to

ninety minutes. Adkins also testified, denying that he signed RFCs implicating the charged substantive counts and stating that he thought the RFCs were used by Conn internally. Adkins also claimed that approximately fifteen of the 249 pre-completed RFCs in evidence did not actually contain his signature, but rather a forgery. The district court called this a "flat-out lie[] to the jury" and took it into account at the sentencing hearing. RE 281, PageID #3131, 3157.

The jury found Adkins guilty on all charges. He was sentenced to concurrent terms of 240 months' imprisonment for conspiracy to commit mail and wire fraud, mail fraud, and wire fraud, and sixty months' imprisonment for making false statements, to be served consecutively.

## II.

Adkins now appeals his conviction and sentence, arguing that: (1) the district court improperly allowed discussion of the intended and actual loss caused by the entire scheme, unduly coloring the jury's view of the actual elements at issue; (2) the district court erred in admitting co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), thus diminishing the burden of proof and usurping the jury's fact-finding function; and (3) the district court imposed a substantively unreasonable sentence by failing to consider the disparity between Adkins' sentence and those of the other conspirators, and by neglecting to contemplate the collateral consequences of Adkins' conviction.

## A.

Adkins' first argument is that the district court erred by admitting evidence of the intended and actual loss associated with the entire conspiracy. In doing so, he asserts that the loss amount evidence is not relevant to the charged offenses—mail and wire fraud—and that even were it relevant, it unfairly biased the jury.

Case No. 17-6168
*United States of America v. Alfred Bradley Adkins*

Generally, we review a district court's determinations as to relevance and unfair prejudice for abuse of discretion. *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006). However, Adkins failed to object at trial.[2] Accordingly, we review for plain error. *See United States v. Deitz*, 577 F.3d 672, 688 (6th Cir. 2009). Reversal under this standard requires "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quotations and citations omitted).

Specifically, Adkins objects to the testimony of Frances Barry, the Deputy Assistant Regional Commissioner for the SSA's Processing Center Operations. At trial, Barry discussed the intended loss—"the total amount of money that Social Security would have paid out, assuming things went normal, until the person basically aged out of disability"—stating that it was close to $600 million, and that the subset of this loss attributable to cases where Adkins had pre-completed forms was upwards of $60 million. The Government also presented evidence that the actual loss from the scheme was $46.7 million, the total payments to Conn as a result of the scheme were $7,518,341.22, and the total amount related to Adkins-signed RFCs was $879,536.39.

To determine if error occurred, we must determine if the foregoing evidence was (1) relevant, and (2) whether it unfairly prejudiced Adkins' trial. Fed. R. Evid. 401, 403; *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A court may exclude relevant evidence where its probative value is "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

---

[2] We note that, prior to trial, Adkins moved to strike the reference to the intended loss amount from the indictment. The district court denied the motion. This does not obviate the need to contemporaneously object at trial in order to preserve an abuse of discretion standard on appeal. *See United States v. Deitz*, 577 F.3d 672, 689 (6th Cir. 2009). Indeed, Adkins concedes that the issue was not properly raised below. (Appellant's Br. at 8.)

Here, the Government referred to loss throughout the trial—both intended and actual—to illustrate Adkins' knowledge and intent to deprive SSA of funds. Knowing participation in a scheme to defraud and intent to defraud are both elements of mail and wire fraud. *See United States v. Martinez*, 588 F.3d 301, 316 (6th Cir. 2009); *United States v. Vasilakos*, 508 F.3d 401, 409 (6th Cir. 2007). Although the exact loss amounts may not be relevant to Adkins' alleged crimes on their face, the scheme itself—including the intended and actual results of that scheme—can be used to prove intent. *See United States v. Isaiah*, 434 F.3d 513, 519-20 (6th Cir. 2006) ("[I]ntent to defraud can be proven . . . by inferences drawn from the scheme itself.") (quoting *United States v. Ryan*, 213 F.3d 347, 350 (7th Cir. 2000)); *see also, e.g.*, *United States v. Whitehead*, 176 F.3d 1030, 1038 (8th Cir. 1999) ("The scheme itself often serves as evidence of a defendant's intent to defraud.") (citing *United States v. Yoon*, 128 F.3d 515, 524 (7th Cir. 1997) ("the sheer number of checks and amounts of money involved in this scheme . . . provide a surrogate for [the defendant's] knowledge)); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) ("When the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." (quotation omitted)). The scope and breadth of the fraud were probative of Adkins' knowledge and intent. Though such evidence may not be *per se* relevant to all mail and wire fraud cases, given the low bar for admission under relevancy, we cannot say that the district court erred in allowing testimony regarding the actual and intended loss amounts under these circumstances. *See Cambio Health Sols., LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007) (noting low bar as to determination of relevancy).

Even assuming relevance, Adkins asserts that he was unduly prejudiced by the introduction of the loss amount calculation because that evidence was disconnected from the offense and served to inflame the jury and magnify the seriousness of his offense. But such evidence was

methodically given and included the intended loss, actual loss, and loss which could be attributed directly to Adkins' conduct. Though there is vast disparity in the amounts, nothing in the testimony asserted that Adkins was in fact responsible for the entire conspiracy's losses. Nor does knowledge of the attempts and successes of the conspiracy as a whole unduly inflame or influence a jury as to Adkins' individual participation in the artifice or his guilt therein. Moreover, there is no bar against extrapolating a conspiracy's losses absent government intervention. And Adkins fails to provide any precedent—analogous or otherwise—in which the introduction of conspiracy loss amounts has been found to unduly prejudice a defendant. Due to a district court's broad discretion in admitting or excluding evidence under Rule 403, we will not find that admission of such evidence unfairly prejudiced Adkins. *United States v. Gibbs*, 797 F.3d 416, 423 (6th Cir. 2015) ("With respect to prejudice, the district court is granted wide latitude in its Rule 403 determinations.").

Though loss amounts such as those introduced here may not be relevant to every mail and wire fraud case, a credible claim for relevance exists as to the social security fraud as a whole. Given the low bar for relevance and the broad deference afforded to district courts, there was no plain error. Even were we to find otherwise, it is wholly unclear how the admitted evidence would have affected Adkins' substantial rights.

B.

Adkins next argues that the district court improperly admitted co-conspirator statements, thereby lowering the prosecution's burden of proof in violation of his constitutional rights. Specifically, the district court allowed one of Conn's former employees, Misty Long ("Long"), to testify about her conversations with Conn regarding RFCs that Adkins completed. Long testified that if Adkins transmitted a non-disabling RFC, Conn would dictate Adkins' re-submission to

ensure that Daugherty would accept it and find the claimant disabled. At the time, Adkins' counsel objected under Federal Rule of Evidence 801(d)(2)(E). Outside the presence of the jury, the district court explained that it admitted the statement under 801(d)(2)(E) as a co-conspirator statement, that the court need only determine the existence of a conspiracy by preponderance of the evidence, and that it determined that the speaker was involved in the conspiracy and the statements admitted were in furtherance of that conspiracy.

Adkins asserts that we must review the admission of evidence de novo. He is correct that when a defendant raises a constitutional claim pertaining to the admission of evidence, de novo review is proper. *Vasilakos*, 508 F.3d at 406 (reviewing Confrontation Clause claim de novo). However, the Government avers that, because Adkins raised only a hearsay objection at trial— rather than a constitutional one—plain error review applies. *See United States v. Ford*, 761 F.3d 641, 652-53 (6th Cir. 2014). But because we largely review the introduction of co-conspirator statements de novo, and because Adkins fails under either standard, we review de novo. *See United States v. Pembrook*, 876 F.3d 812, 826 (6th Cir. 2017) ("We need not decide whether this claim was properly preserved because even under de novo review [it] would fail").

Generally, to admit the statements of a co-conspirator under Rule 801(d)(2)(E), the district court must find that: (1) the conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator made the proffered statements in furtherance of the conspiracy. *See United States v. Wilson*, 168 F.3d 916, 920 (6th Cir. 1999). As the Government briefed, this is often referred to as an *Enright* finding. *See United States v. White*, 58 F. App'x 610, 614 (6th Cir. 2003) (citing *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978)). Under this doctrine, the district court may "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *Id.* (quotation omitted). As indicated, we

review the three foundational requirements—existence, membership, and furtherance—for clear error, but review the district court's ultimate legal conclusion regarding admissibility de novo. *United States v. Maliszewski*, 161 F.3d 992, 1007 (6th Cir. 1998).

Here, it is clear that the court made a proper *Enright* finding. The court explained its ruling explicitly, noting that the alleged statements were made by a member of and in furtherance of the conspiracy. Adkins, though, does not challenge these traditional findings on appeal. Instead, Adkins asserts that the entire doctrine is unconstitutional—both fundamentally, and in light of *United States v. Booker*, 543 U.S. 220 (2005). In doing so, Adkins makes wholesale arguments against the admission of co-conspirator statements, contending that they: (1) diminish the standard of proof; and (2) usurp the jury's charge to determine whether or not a conspiracy exists, and to do so beyond reasonable doubt.

These are settled issues. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Although *Bourjaily* predates *Booker*, Adkins admits that *Bourjaily* squarely held that the "evidentiary standard is unrelated to the burden of proof on the substantive issues." *Id.* The *Enright* rule is consistent with *Bourjaily*, and neither *Booker* nor its progeny—which reiterate that a defendant is entitled to have a jury find each of the element of an offense—have any effect on the preliminary evidentiary rulings at issue here. Indeed, the district court explicitly instructed the jury on the elements of conspiracy, explaining that the Government bore the burden of proving each element of the charged crimes beyond a reasonable doubt; Adkins has not challenged those instructions. The district court also provided a thorough explanation of its evidentiary finding as to the admission of the statements and that a conspiracy existed. Unsurprisingly, Adkins provides no precedent—from this Court, or any other—that casts doubt on the admission of such statements. The district court was correct in admitting the evidence under any applicable standard.

C.

Finally, Adkins argues that his sentence was substantively unreasonable because the court failed to consider either the disparity between his sentence and those of his more-culpable co-conspirators, or the collateral consequences of his conviction.

We review sentencing decisions deferentially, for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). "This review has two components: procedural reasonableness and substantive reasonableness." *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). Adkins challenges only the substantive reasonableness of his sentence. In reviewing a below-Guidelines sentence—as here—we presume that the sentence is reasonable and note Adkins' heavy burden to show otherwise. *See United States v. Elmore*, 743 F.3d 1068, 1072 (6th Cir. 2014).

Adkins claims that, by imposing a sentence "more than double that of the 12 years received" by Conn—the mastermind of the scheme—and more than six times the four-year sentence given to Daugherty—a government official integral to every fraudulent claim—the district court selected his sentence arbitrarily. (Appellant's Br. at 23.) This argument finds no support in fact or law. First, it is clear that in sentencing Adkins the district court considered the culpability and the sentences of Conn and Daugherty. The court noted that these co-defendants had pleaded guilty—thereby accepting responsibility for their crimes—and were sentenced to the statutory maximum for their convictions. Adkins, on the other hand, chose to proceed to trial, refused to accept responsibility for his role in the action, and was sentenced accordingly. That Adkins' sentence reflects his failure to accept responsibility is underscored by the fact that he committed perjury at trial, further denying his criminal culpability. Nonetheless, he was sentenced to less than half of his Guidelines-recommended sentence. Second, even if the district court had

ignored the differing sentences, disparity between co-defendants is of no moment under § 3553(a)(6). *See, e.g.*, *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (noting that the subsection is "not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants"). Instead, § 3553(a)(6) "is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct," *id.* (emphasis added), an argument Adkins does not make. Again, Adkins fails to provide any precedent supporting a contrary position.

Adkins also asserts that, despite precedent in this Circuit barring such consideration, the district court should have contemplated the collateral consequences of his sentence. *See United States v. Musgrave*, 761 F.3d 602, 608 (6th Cir. 2014) (holding collateral consequences of a defendant's conviction may not be considered in determining sentence that reflects seriousness of offense, promotes respect for rule of law, and provides just punishment) (quotation omitted). But "[i]t is firmly established that one panel of this court cannot overturn a decision of another panel," even if we are persuaded by the rationale of a litigant or another circuit. *U.S. v. Lanier*, 201 F.3d 842, 846 (6th Cir. 2000). The circuit split Adkins alleges does not change this. Though Adkins acknowledges that his argument is raised to preserve it for en banc or Supreme Court review, (Appellant's Br. at 27), it is nonetheless unclear what consequences would entitle him to relief in any event. Regardless, we cannot and will not depart from existing precedent.

**III.**

Regarding the relevance of the loss amount calculations admitted at trial, and the prejudice allegedly caused by that evidence, we afford the district court its due discretion and do not find clear error. The remainder of Adkins' disputations are foreclosed by existing precedent in this Circuit and the Supreme Court. We **AFFIRM**.